(No. 38932.—

*In re* LOUIS L. MASON, Attorney, Respondent.

*Opinion filed May 20, 1965.—Rehearing denied September 27, 1965.*

DAVID J. A. HAYES, JR., of Springfield, and E. HAROLD WINELAND, of Flora, for the Commissioners.

LOUIS L. MASON, *pro se.*

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

The Board of Governors of the Illinois State Bar Association, acting as commissioners of this court under Rule 59, filed a report recommending that the respondent, Louis L. Mason, be disbarred and his name stricken from the rolls of attorneys of this court. Respondent filed exceptions to the report and the cause is now before us.

Counts I, II and III of the complaint involve respondent's conduct in filing a civil action against Judge Rodney A. Scott and thirteen other defendants seeking damages in the total amount of $4,300,000. Count V contains charges against respondent specifying various disrespectful acts of respondent in the course of trying cases from January, 1956 to July, 1962. Count IV was dismissed.

After a hearing the hearing division panel found that the evidence supported the charges contained in counts I, II, III and V, and recommended disbarment. On review the commissioners sustained objections as to the findings on

count V, but approved the report and recommendations of the hearing division panel as to counts I, II and III.

At the hearing five witnesses testified in support of the charges, and respondent alone testified in his own defense.

It appears from the record that respondent conducted arguments for the week prior to Friday, February 3, 1961, before Judge Scott in a criminal case entitled People v. Sharp. That Friday evening respondent returned to his home in Decatur where he had a dispute with his mother-in-law, Mrs. Harpstrite. That evening, upon her complaint, a warrant was issued for the arrest of the respondent. The following morning, while in custody on that warrant, respondent was served with notice of hearing on a mental illness petition verified by Mrs. Harpstrite. Dr. V. T. Turley was appointed an examining physician and filed his written report showing respondent to be in need of mental treatment. Upon examination of the petition and physician's report, Judge Scott, sitting in interchange at the request of acting County Judge William C. Calvin, on Saturday, February 4, 1961, ordered that respondent be restrained for the protection of himself and others, pending a hearing on the petition the following Monday. This was the last act of Judge Scott relating to respondent.

After Monday, February 6, 1961, the petition was continued from time to time until on February 9, when the original order of Judge Scott was modified by joint motion of the State's Attorney and attorney for respondent. The modification permitted respondent to be removed to a veterans' administration hospital for treatment, and thereafter the cause was dismissed.

Approximately two years later respondent filed a civil suit in Macon County against fourteen defendants. The first count was directed against Judge Scott and in its material portions precisely as it appears in the record alleged as follows:

"3. That the said R. A. Scott, was acting as pre-

siding judge in the Circuit Court of Macon County, Illinois, on preliminary motions in a criminal case wherein People were plaintiff and one Frank Sharp was defendant, following the granting of a change of venue from M. E. Morthland, a circuit judge for the 6th Judicial Circuit, which file, meaning the Sharp case is incorporated herein by reference as though fully set out.

"4. That on or about February 2, 1961, the said defendant purported to entered and spread upon the records of this Court an order setting a hearing on Saturday as contrary to law and to the mandate of the Board of Supervisors of this county, which order said defendant knew or should have known to be illegal and of no force and effect.

"5. That on or about February 2, 1961, the said defendant illegally caused the then acting County Clerk, and Clerk of the County Court in and for Macon County, Illinois, one Darrell Foster, who was such clerk pro tempore by virtue of appointment of said Board of Supervisors to fraudulently open the County Court and appoint this defendant as acting judge and he signed what appeared to be legal papers having for their purpose xxx an inquiry as to the alleged mental illness of this plaintiff, and ordered that be no bond which took aways and denied to this plaintiff his freedom and denied him due process of law, and took away his civil liberties, upon the averments of one Mary Harpstrite and Bert Hirst, who were not interviewed or sworn by this defendant or said clerk as required by law, all of which kept this plaintiff away from his family and children and prior profitable profession and denies this plaintiff an opportunity to be a dead-bed of this plaintiff's wife, Mary Ann Mason, who then was in terminal illness from cancer at a local hospital.

"WHEREFORE, this plaintiff prays judgment against said defendant in the sum of not less than

  $250,000.00 and costs and demands a trial by jury of these issues."

The suit was subsequently dismissed as to all defendants upon motion and no appeal has been taken.

  At the hearing Glen R. Cooper, a newspaper reporter for a Decatur newspaper, testified that the respondent told him prior to the filing of the suit on February 1, 1963, that "I am going to file a suit that's going to shake hell out of the County." Thereafter respondent also told Cooper that "I am going to nail these officials and that damn Judge." He also told Cooper that he was naming as defendant "that god-damn Scott." Cooper also testified that on the day the suit was filed respondent told Cooper, "You haven't treated me right in publicity and this is one time I want publicity * * * I want the biggest headline you've got on this suit * * * Now don't forget I want headlines on this one."

  The record also contains evidence of extremely unconventional behavior on the part of respondent over a period of several years while engaged in the trial of law suits in the Sixth Judicial Circuit, which we have examined. We have also examined the brief filed by respondent, *pro se,* before the commissioners and we feel compelled to state that we have seldom seen a more vituperative, scandalous, and unprofessional document.

  It is well settled that while the judiciary may be subject to just criticism for their rulings and behavior, they enjoy immunity from civil suits based upon their judicial acts. *Bradley* v. *Fisher,* 13 Wall. 335, 20 L. ed. 646; *People ex rel. Chicago Bar Ass'n* v. *Standidge,* 333 Ill. 361.

  In *People ex rel. Chicago Bar Ass'n* v. *Metzen,* 291 Ill. 55, the court disbarred an attorney who brought a suit against a trial judge for damages on account of his ruling and prepared newspaper articles gaining publicity for his suit. Respondent there made the same claim as respondent here that this was his only method of redress against the acts of the trial judge which harmed him in his reputation.

The court stated in that case at page 58: "Judges are not exempt from just criticism, and whenever there is proper ground for serious complaint against a judge it is the right and duty of a lawyer to submit his grievances to the proper authorities, but the public interest and the administration of the law demand that the courts should have the confidence and respect of the people. Unjust criticism, insulting language and offensive conduct toward the judges, per-personally, by attorneys, who are officers of the court, which tend to bring the courts and the law into disrepute and to destroy public confidence in their integrity,· cannot be permitted."

In *People* v. *Standidge,* 333 Ill. 361, we suspended an attorney for bringing a civil action against appellate judges based upon an allegedly erroneous decision. We there said at pages 366 and 367: "The respondent failed to show the slightest illegality, or even irregularity, on the part of the judges of the Appellate Court in deciding his appeal. The judges merely performed their duty, and when he instituted the suit for damages against them and charged that they willfully, wantonly and corruptly made false statements and findings against him, he demonstrated a complete lack of the proper conception of his duties and responsibilities as a member of the bar. The first canon of ethics of the legal profession makes it the duty of a lawyer to maintain toward the courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office but because the proper maintenance of that office is of supreme importance. It should never be possible to say that judges cannot be held responsible civilly for their acts in the absence of all jurisdiction of the subject matter, for such a doctrine contains the seeds of oppression; but it is of the greatest importance to the welfare of the people that for acts within his jurisdiction the judge should be immune from attack in a civil proceeding. It is his duty to hear and decide cases that involve not only property, but even liberty and life itself. His

decisions not infrequently incite a feeling of bitterness and the defeated litigant readily ascribes improper motives to the judge. If under such circumstances that officer may be harassed by a civil suit, judicial independence, which is essential to the rights and liberty of the citizen, will be swept away."

Respondent argues that the orders upon which he based his civil action were entered by Judge Scott without jurisdiction and therefore were nonjudicial acts. He claims this is so because the order was entered on a Saturday which made it *ipso facto* illegal and that there was only one county judge, and Judge Scott had no right to sit in his place and stead. These arguments are so totally frivolous that we cannot believe that they could be seriously put forth by responsible counsel. Respondent also insists that his motives were pure and that he only sought to prosecute a cause of action wherein he felt he was legitimately aggrieved. The entire record belies this contention.

The testimony clearly indicates that respondent exhibited extreme hostility for many years to the judges of this circuit. The testimony of the reporter also indicates a purpose to publicly attack Judge Scott and others and his very brief filed before the commissioners gives testimony to his true motive to discredit the judiciary of his circuit and fill the record with unsubstantiated charges. We think there is ample evidence that respondent filed the suit against Judge Scott with completely improper and unprofessional motives for the purpose of bringing the judiciary into disrepute.

Respondent also claims that the hearing before the commissioners was unfair in that he was denied a bill of particulars. We have examined this contention and find that the request for a bill of particulars has some merit in connection with the charges contained in count V of the complaint. However, since we concur in the opinion of the commissioners that the allegations contained in count V were

not proved, we need not consider this further. The first three counts clearly and sufficiently stated the charges against respondent. Upon this entire record we feel that the respondent acted in a manner to bring the administration of justice into disrepute and did so without any proper or justifying motive. We therefore feel that he is subject to disciplinary action. We have considered, however, his past record which has been untainted with any charge of moral turpitude and have also considered the strain that circumstances have placed upon respondent and we do not think that justice requires that he be disbarred, but rather that he be suspended and, therefore, respondent is suspended from the practice of law for a period of one year.

At the close of oral argument respondent made certain oral motions relating to and seeking reimbursement for his expenses and the taxing of certain costs. These motions are hereby denied.

*Respondent suspended.*