UNITED STATES of America ex rel. the Honorable Edwin A. ROBSON, Plaintiff-Appellee,

v.

Frank W. OLIVER, Defendant-Appellant.

No. 18553.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1972.

Decided Oct. 19, 1972.

As Amended Dec. 6, 1972.

Rehearing En Banc Denied Jan. 4, 1973.

---

Joel D. Rubin, Frank W. Oliver, David A. Goldberger, Robert W. Gettleman, Brian Meltzer, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman, John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before KILEY, SPRECHER and HAMLEY [1], Circuit Judges.

KILEY, Circuit Judge.

Attorney Frank W. Oliver appeals from a district court order adjudging him guilty of two specifications of summary contempt, entered at the conclusion of a criminal trial.[2] We reverse the judgment.

Oliver represented four of fifteen defendants charged with mutilating draft records. All defendants admitted the charge. Oliver's four defendants, however, sought to present a theory of defense based on insanity. They contended that at the time of entering and destroying the records they were acting under insane delusions. The specifications of contempt are based upon Oliver's questioning of a witness and his argument to the jury.

At the conclusion of the trial, and after the jury had returned its verdict in favor of the government, the district court, pursuant to 18 U.S.C. § 401 and

1. Circuit Judge Frederick G. Hamley of the Ninth Circuit is sitting by designation.

2. United States v. Chase et al., 468 F.2d 141 (7th Cir. 1972). The *Chase* case involved fifteen defendants charged with substantive and conspiracy counts of destroying Selective Service records. Ten defendants were convicted. The convictions of eight of the ten were affirmed by this court.

F.R.Crim.P. 42(a), entered its contempt order and fined Oliver $500 on each specification. The only issue before us is whether it can "clearly be shown" from the record that Oliver's conduct rose to the level of contemptuous "misbehavior" which "obstructed" the judge in performance of judicial duty. In re McConnell, 370 U.S. 230, 234, 82 S.Ct. 1288, 8 L.Ed. 2d 434 (1961); United States v. Sopher, 347 F.2d 415 (7th Cir. 1965).

## I.

Oliver's cross-examination of one of the defendants, not one of his clients, shows the following colloquy:

BY MR. OLIVER:

Q. On direct examination you testified that you walked down a hall; is that right?

A. Right.

Q. And I show you what has been marked as Government Exhibit 16–C (2). Is that a portrait of that hall?

A. Yes, that looks like it.

Q. A long, long hall; is that right?

A. Yes.

Q. And is there any sign down at the end of that hall?

A. I can't see one.

Q. Can you make out the little sign? Is there a sign there?

MR. HOFFMAN: If there is a sign, why doesn't Mr. Oliver just read the sign?

MR. OLIVER: Well, my eyes aren't so good. Is there a sign there that says, "Abandon Ye All Hope Who Enter Here"?

(Laughter)

MR. HOFFMAN: I object, your Honor.

(Laughter, applause and shouts)

THE COURT: Clear the courtroom. There will be no more of that. Clear the courtroom of all spectators. (Tr. 3228–3229).

Later, outside the presence of the jury, Oliver explained to the judge why he had asked the questions, when there had been no "sign" in the picture:

The reason I asked that, your Honor, is because this particular Government exhibit is reminiscent, I should think, of any child's notion of the gateway to Hell. That is what it looks like. And if there isn't a sign there that says that, there ought to be one there. And if there isn't one that you can see in the picture, there certainly is one that appears in the imagination of any sensitive person, I think.

The court found that Oliver "deliberately asked a provocative and inflammatory question, unfounded in the evidence, which disrupted the trial [and which] was committed within the presence of the court."

■ Under 18 U.S.C. § 401 a district judge has power to summarily punish "[m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401(1); see also F.R.Crim.P. 42(a).[3] The elements of summary contempt—as recently interpreted by this court in United States v. Seale, 461 F.2d 345 (7th Cir., decided May 11, 1972)—are 1) *Intentional* conduct constituting 2) *misbehavior* which causes 3) an *actual and material disruption* or obstruction of the administration of justice 4) *within the court's presence.* And

where, as here, the conduct complained of is that of an attorney engaged in the representation of a litigant, the search for these essential elements of the crime of contempt must be made with full appreciation of the contentious role of trial counsel and his duty of zealous representation of his client's interests.

3. F.R.Crim.P. 42 Criminal Contempt
 (a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

In re Dellinger et al., 461 F.2d 389 at 397 (7th Cir., decided May 11, 1972).

In dealing with an attorney's contempt, the Supreme Court noted in In re McConnell, 370 U.S. 230, 236, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1961):

> [W]hile we appreciate the necessity for a judge to have the power to protect himself from actual obstruction in the courtroom . . . it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases. An independent judiciary and a vigorous, independent bar are both indispensable parts of our system of justice. To preserve the kind of trials that our system envisages, Congress has limited the summary contempt power vested in courts to the least possible power adequate to prevent actual obstruction of justice.
>
> . . .

370 U.S. at 236, 82 S.Ct. at 1292; *Dellinger*, 461 F.2d at 397; see also United States ex rel. Robson v. Malone, 412 F.2d 848, 850 (7th Cir. 1969).

■ Accordingly, this court has required that lawyers be given "great latitude" and "extreme liberality" in the area of vigorous advocacy. In *Dellinger* the court stated:

> Attorneys have a right to be persistent, vociferous, contentious, and imposing, even to the point of appearing obnoxious, when acting on their client's behalf. An attorney may with impunity take full advantage of the range of conduct that our adversary system allows.

*Id.* 461 F.2d at 400. Furthermore, the court thought that in close cases where the line between vigorous advocacy and actual obstruction defied strict delineation, doubts should be resolved in favor of vigorous advocacy. *Id.* 461 F.2d at 398.

■■ In view of this "extreme liberality" afforded trial counsel in their representation of clients, and resolving any doubts in favor of vigorous advocacy, we do not think that the conduct charged in the first specification rises to the level of "misbehavior" necessary to support a contempt citation. Oliver's question was related to defendants' proffered theory of defense and touched on the insane "preceptions" and "delusions" which the defendants claimed to have held prior to making the raid on the draft board files. The finding that the questions were asked deliberately is at least ambiguous. We disagree with the government that Oliver's conduct amounts to a "palpable obstruction," sufficient without the element of intent. Unless the conduct of the spectators can be attributed to him, Oliver cannot be held responsible for their conduct. Furthermore, the lack of any finding by the district judge that Oliver knew or should have known that the questions exceeded the bounds of conduct approriate to his role as trial counsel we think substantiates our view that Oliver's conduct did not exceed the "outermost limits" of vigorous advocacy.

■ It is not enough that the questions were provocative or inflammatory. If lawyers were barred from asking provocative and penetrating questions at trial merely because they may provoke or inflame, then an essential goal of every fact finding process—the discovery of truth—would indeed be thwarted. In any trial where emotions run high, we think it inevitable that some questions will provoke witnesses or spectators or inflame their passions. And we are not persuaded that the questions were not founded in the evidence under defendants' theory. But even if it was evidentially improper, we see no reason why the trial judge could not—by use of the least power necessary—have stricken it from the record with an appropriate instruction to the jury to disregard the question. Nor is it enough for the government to argue that Oliver engaged in a "strategy of misconduct." The government concedes that each act was insufficient in and of itself to warrant disciplinary action. This supports our view that Oliver's conduct was not beyond the outer bounds of zealous advocacy.

**14**

We hold that the record does not "clearly show" that the conduct cited in the first specification of the contempt order was conduct so inappropriate to Oliver's role as trial counsel as to exceed the "outermost bounds" of vigorous advocacy.

## II.

In Oliver's closing argument he said:

Members of the jury, I am sorry I wasn't able to do more in developing the facts in this case for you. I am sorry I wasn't able to do more in arguing the case for you. I did want to put a few things together for you, and I am conscious of the fact that my remarks have been to some extent somewhat disjointed, because I was touching on a number of areas.

That is one reason they may have seemed a little disjointed, but I have a problem these days in courts. There was a time when I thought I knew something about the rules of evidence and what evidence was admissible and what evidence wasn't admissible, and what I was permitted to ask questions on, and what I could say in arguments.

I used to think I knew about that kind of thing, but I have learned in this case that I just don't know anything about that. (Tr. 3895–3896).

■ The district judge found that the remarks "were contemptuous of the court and of the court's rulings, and brought improper matters to the attention of the jury . . . within the court's presence."

We are not persuaded by the government that Oliver's closing remarks rose to the level of an "actual and material obstruction," *Seale*, 461 F.2d at 370, 371, necessary to support a contempt citation under 18 U.S.C. § 401(1). This court's decision in United States ex rel. Robson v. Malone, 412 F.2d 848 (7th Cir. 1969), is of no aid to the government's argument here. The record does not show, and the judge's specification itself does not cite, any actual disruption of the trial proceedings. Apparently the judge did not think it necessary to excuse the jury for the purpose of admonishing Oliver. No physical disorder in the courtroom, no laughter, shouts or other abusive language directed at the judge or the proceedings resulted from the argument, and nothing to show any intent of Oliver to bring about the result. The remarks were not boisterous, and there was no significant delay in the proceedings which continued in an orderly fashion. And no reason is shown why the judge could not have purged the remarks by instructing the jury to disregard them, as the least exercise of power necessary. We are aware that Oliver's remarks may have suggested disrespect for the court's rulings. However, as the Supreme Court stated in In re Little, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972), where a defendant arguing pro se made similar comments of disrespect:

The fires which it [misconduct] kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil. . . .

404 U.S. at 555, 92 S.Ct. at 660.

We hold that the record does not "clearly show" that the conduct cited in the second specification of contempt "actually and materially obstructed" so as to "immediately imperil" the judge in the performance of his judicial duty.

Reversed.