AMERICAN CYANAMID COMPANY, Plaintiff, *v.* DONALD L. ROGERS *et al.*,
Defendants—(DONALD ROGERS, Contemnor-Appellant.)

MT. PULASKI FARMERS GRAIN AND ELEVATOR COMPANY, Plaintiff, *v.* DON
ROGERS, Defendant—(DONALD ROGERS, Contemnor-Appellant.)

(Nos. 12132-3 cons.;

Fourth District—July 25, 1974.

Joseph W. Basola, of Woollen, Brown & Hawkins, of Decatur, for appellant.

Dick H. Woods, Jr., and Gerald G. Dehner, both of Woods & Bates, of Lincoln, for appellee American Cyanamid Company.

Harris & Harris, of Lincoln for appellee Mt. Pulaski Farmers Grain & Elevator Company.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

We focus our judicial telescope on two orders of the circuit court of Logan County sentencing Donald Rogers (hereafter referred to as defendant) to the county jail for contempt of court. The first is a sentence of 10 days for wilfully refusing to pay a monthly installment on a money judgment contrary to the provisions of an order entered by the court previously in a proceedings to discover assets. In the second case, the sentence was for 30 days for wilfully failing to appear in response to a summons issued in a citation proceedings to discover assets. The cases are consolidated for opinion in this court for the reason that we are asked to delineate the distinction between a civil and criminal contempt proceedings. Both plaintiffs were judgment creditors of the defendant and contend that the county jail sentences were imposed for criminal contempt. The defendant contends that the jail sentences were for civil contempt and that each order of commitment is invalid because (1) it provides no means whereby the defendant may purge himself of contempt and (2) since the debt is dischargeable in bankruptcy, an adjudication in bankruptcy brings to a jolting halt any proceedings in the State court instituted prior to the adjudication and thus the jail sentences shrivel up and die on the vine when an adjudication in bankruptcy takes place. We turn now to the specific cases before us in an effort to make

clear those distinctions between a civil and criminal contempt which have been hazy and to lay to rest, if possible, those which are purely illusory.

■■ The proper resolution of each case depends upon whether or not the defendant was guilty of civil or criminal contempt, and we focus our judicial microscope on that issue first. Speaking generally, criminal contempt consists of acts either committed in the presence of or outside the presence of the court which tend to impede its proceedings, lessen its dignity, disregard or abuse its processes or a refusal or failure to obey a valid order of the court, and is instituted to vindicate the authority or the dignity of the People, as represented by their judicial tribunal. Civil contempt, however, is a remedial process, utilized in the civil suit where one party has a right to require some act on the part of the defendant for his benefit and advantage and obtains an order of the court commanding that it be done and the other party refuses to do as directed. (*Eastman v. Dole*, 213 Ill.App. 364.) In a civil contempt proceeding, the party litigant alone is interested in enforcement and as said litigant is satisfied, the contempt proceeding comes to an end. A finding of willful contempt is a matter of fact to be determined by the trial court and it will not be disturbed on review unless there is a clear abuse of discretion. *Janov v. Janov*, 60 Ill.App.2d 11, 207 N.E.2d 691.

■■ Although the formulation of the distinction between the two types of contempt is reasonably well established in the decisions, the application of the particular distinction to a given set of facts is often indistinct and most imperceptible. (*People ex rel. Chicago Bar Association v. Barasch*, 21 Ill.2d 407, 173 N.E.2d 417.) Indeed, it has been stated that the distinction can be found by looking at the purpose of the punishment imposed and if that purpose is purely punitive and imprisonment is for a definite term, then we have a criminal contempt. Whereas, when the punishment is remedial or coercive and one is committed to jail until compliance, it is a civil contempt. (*Board of Junior College District No. 508 v. Cook County College Teachers Union*, Local 1600, 126 Ill. App.2d 418, 262 N.E.2d 125.) Thus the defendant argues in the instant cases that since the springboard for the citation in each case is the collection of a judgment, the purpose of the citation is merely an attempt to enforce the right of judgment creditors in which the dignity or authority of the court is not involved, or stating it another way, any insult to the dignity and power of the court is purely incidental and when the judgments are satisfied in one way or another, there is no basis for contempt. On the contrary, the respective creditors insist that since both penalties imposed were for a definite period of time, it is patent that we deal here in both cases with criminal rather than civil contempt in that in

Cyanamid the punishment or sanction was purely punitive and in Mt. Pulaski the unjustified disregard of the court's process had the necessary effect of impeding and interrupting the orderly processes of our judicial system without any reasonable justification.

■■ In each case, the judgment creditors instituted citation proceedings seeking to pursue State remedies supplementing or aiding the collection of their judgments. If this may be said to be the test of whether a contempt finding is civil or criminal, then beyond any shadow of a doubt both of these are civil and not criminal. In such instance, we adhere to the conclusions stated in *Todd v. Arbuckle*, 1 Ill.App.3d 32, 272 N.E.2d 257, that an order finding a defendant in civil contempt of court must find that the conduct of that defendant is willful and further must contain within its four corners a statement of what the defendant must do to purge himself. In such cases, therefore, the contempt proceeding is designed to coerce a respondent to do that which he has been previously ordered to do for the benefit of the judgment creditor. In short, its purpose and its result are coercive, and punishment by fine or imprisonment is purely incidental. Not so in a criminal contempt. A criminal contempt is wholly punitive and its aid or assistance to a private party is purely incidental.

■■ Within these distinctions, an examination of the record in each of these cases here clearly demonstrates that they are criminal and not civil. In the *Mt. Pulaski* case, the defendant was found guilty of a willful failure to appear in response to a citation notice. In so finding, the court stated: "I want to say that the court is not impressed with your attitude nor with your explanation. It appears to the court it was willful and justice would be best served by sentencing you to jail for a period considerably longer than 10 days." It is thus clear that civil contempt was far removed from the mind of the trial court and that the sentence imposed was punitive and not coercive. *Parker v. United States* (1st Cir. 1946), 153 F.2d 66, 163 A.L.R. 379, clearly suggests that a fine imposed for a criminal contempt of court is not a debt provable or dischargeable in bankruptcy as distinguished from a compensatory fine imposed in a civil contempt. If a punitive fine is not dischargeable in bankruptcy, it would seem to follow that a punitive jail sentence is likewise unaffected by bankruptcy. In particular this would be true where the contemptuous conduct of the respondent occurred prior to the filing of bankruptcy and most certainly prior to a discharge of the underlying obligation in bankruptcy. Bankruptcy did not affect the penalty here imposed.

In like manner in *Cyanamid*, the defendant had been paying $18 per month for about a year on a previous order entered in a citation-to-discover-assets proceeding. He missed July, August, and September, and

156

the citation proceeding we now consider was filed. The evidence there disclosed that this defendant defaulted on his July payment at a time when he had ample funds to discharge it. The trial court limited the testimony on the hearing to the time from the default in July until the bankruptcy proceeding in October. The court's findings were: "The court, with respect to the petition, finds that the defendant is in willful contempt of this court for failure to pay the July payment for 1972; that he had the sum of $800 he received during that period of time, notwithstanding some other employment income, which was not considered by the court and to which he was entitled as an exemption, but he had $800 and he could have paid the July payment. He is in willful contempt of court for failure to pay the July payment." And the court then sentenced the defendant to 10 days in the county jail and specifically found that he was not in willful contempt of court for failure to pay the August, September and October payments. In short, the court found that the defendant willfully refused to pay the July payment when he had the funds and the ability to do so and that the failure to do so was contemptuous and unjustified.

■■■ It is thus clear that when we look to the proceedings in these cases, the order of the court was punitive and not coercive. It was imposing punishment for contumacious conduct which had already occurred, and nothing that the defendant could then do would purge him of contempt. When he refused to obey the citation, bankruptcy was not an intervening problem. When he refused to make the July payment when he had available funds, bankruptcy was no problem. Bankruptcy is an affirmative defense and may be pleaded or waived by the debtor. In the instant cases, had there been a discharge in bankruptcy, it would have been impotent to absolve the defendant from punishment for criminal contemptuous conduct antedating the adjudication in bankruptcy and subsequent discharge.

The judgments of the trial court in both No. 12132 and No. 12133 are correct and they should be and they are hereby affirmed.

Affirmed.

CRAVEN and SIMKINS, JJ., concur.