THE PEOPLE *ex rel.* PEYTON H. KUNCE, Circuit Judge, Petitioner-Appellee,
*v.* DENNIS HOGAN *et al.*, Respondents-Appellants.

Fifth District    No. 74-313

Opinion filed April 19, 1976.

JONES, J., dissenting.

Paul Bradley and Jan Stonecipher, both of State Appellate Defender's Office, of Chicago, for appellant James Coleson.

Melvin B. Lewis, of Chicago, for appellant Dennis Hogan.

William F. Meehan and Ralph J. Mendelsohn, both of Illinois State's Attorneys Association, of Cairo, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:
This is an appeal from an order of the circuit court of Alexander County finding appellants, a criminal defendant and his lawyer, in contempt of court. Appellants were each prosecuted on three counts of a rule to show cause, charging that their refusal to cooperate fully with the preparation of a presentence report and their filing of a civil action against the presiding judge were contemptuous.

By jury verdict, appellant James Coleson was found guilty of two counts of perjury for falsification of an application for welfare benefits. Coleson, represented by appellant Dennis Hogan, did not testify at trial. The trial judge ordered a presentence investigation of Coleson, and ordered Coleson and Hogan to cooperate fully with the probation officer conducting the investigation. After post-trial motions were filed by Hogan on Coleson's behalf, but prior to sentencing, appellants filed a civil suit against three judges of the circuit court and the State's attorney of Alexander County for damages arising out of bail practices in the criminal proceedings against Coleson.

At an interview with the probation officer, Coleson provided certain background information, but on the advice of Hogan, refused to answer questions material to the perjury offense, asserting instead his rights under the first, fifth and sixth amendments to the United States Constitution. After a hearing on the post-trial motions, the trial judge was informed of appellants' actions at the interview. He then ordered a second interview,

ordered Coleson to respond to all questions asked by the officer, ordered Hogan not to interfere, and warned both appellants of possible contempt citations. The trial judge further stated that he was granting full and complete immunity to Coleson for all information given to the probation officer. A second interview was held and again, on Hogan's advice, Coleson refused to answer certain questions and refused to take a literacy test. Sentence for the perjury convictions was thereafter imposed by the trial judge.

A few days prior to sentencing, the trial judge filed a rule to show cause charging appellants with contempt. Count I of the rule related to appellants' actions with respect to the presentence investigation, Counts II and III related to the civil action in which the trial judge was named a defendant. Because of the action pending against him, the trial judge excused himself and another judge, who will hereafter be referred to as the "presiding judge," presided over the contempt proceedings. Appellants were adjudged in contempt of court on all three counts. Hogan was fined $750 for each of the three counts, sentenced to three concurrent 30-day jail terms, and referred for possible disciplinary action to the Attorney Registration and Disciplinary Commission. Coleson was fined $100 for each count.

■■ Under the statutes of the State of Illinois a sentencing court is required to order a presentence report for any defendant convicted of a felony, unless waived by the defendant. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—3—1.) The purpose of the presentence report is to provide the court with information about the defendant so that sentence may be imposed, with the court being able to take into account not only the nature and circumstances of the offense but also the history and character of the defendant, his mental and physical condition, and his social situation. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—3—2.) In the instant case, defendant Coleson chose to take advantage of his right to have the court impose an informed sentence, but without discussing certain matters with the investigating officer. Putting aside for a moment the validity of Coleson's asserted privilege against self-incrimination, we are faced with the issue of the power of a sentencing court to order a defendant who does not waive the presentence report to communicate with an investigating probation officer. Does a defendant's failure to waive the report amount to a waiver of any and all objections, legal or personal, that he may have to disclosing certain information?

There exists in this country a right to testimony, based in part on the sixth amendment's right to confrontation and the right to subpoena witnesses, which has been characterized as necessary to the functioning of the courts and to the preservation of an orderly society. (*Blair v. United States*, 250 U.S. 273, 281, 63 L. Ed. 979, 982-83, 39 S. Ct. 468, 471 (1919);

Lilienthal, *The Power of Governmental Agencies to Compel Testimony*, 39 Harv. L. Rev. 694 (1926).) Based on one party's right to testimony is the concomitant duty in another party to testify. And to effectuate the right to testimony, thus, to enforce the duty to testify, there exists the power to compel testimony. Without a right to testimony, or some governmental necessity, there can be no power to compel. Recognizing the burden of . enforcing the duty to testify, Justice Homes stated, "[T]he power to require testimony is limited, as it usually is in English-speaking countries, at least, to the only cases where the sacrifice of privacy is necessary * * *." (*Harriman v. Interstate Commerce Com.*, 211 U.S. 407, 419-20, 53 L. Ed. 253, 263, 29 S. Ct. 115, 118 (1908).) And in order that the proper balance may be struck between the necessity for testimony and the policy of noninterference, the power to compel is possessed primarily by the judiciary. (Lilienthal, at 695; Wigmore, Evidence §2195 (1961).) Therefore, the power to compel testimony before an inferior judicial officer, such as the probation officer in this case, depends upon the existence of the power in superior court. Wigmore.

In the instant case the validity of the trial judge's order that defendant Coleson communicate with the probation officer depends upon the court's right to the information sought. We can conceive of no basis for such a right.[1] To the contrary, a defendant has the right to waive the entire presentence report. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—3—1.) We do not believe that the lack of such a waiver magically creates a right in the court to probe the mind of the defendant or a governmental necessity for his testimony. Courts in other jurisdictions have stated that interrogation of a defendant by a sentencing court is improper after a verdict of guilty has been rendered by a jury. *E.g., Heyward v. State*, 161 med. 685, 158 A. 897, 900-901 (1932).

■■ Furthermore, the Supreme Court has held that at the sentencing stage a defendant still possesses basic due process rights. (*Mempa v. Rhay*, 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254 (1967).) It is our conclusion that a defendant facing sentencing by an Illinois court has the right to be free from the burden of the duty to testify, unless there exists an overriding governmental necessity, or a right to his testimony, neither of which are present in this case.

Then too, it is clear that the defendant's refusal to answer questions was justified under the fifth amendment privilege against self-incrimination. At the time of Coleson's refusal to testify he had been adjudged guilty by a jury of the offense of perjury. The lower court apparently believed that as a result of the guilty verdict, Coleson's fifth amendment privilege

---

[1] We are not dealing with the question of a defendant's right to information in the possession of a third person who is interviewed by a probation officer in the preparation of a presentence report.

ceased. It is true that the removal of the possibility of incrimination, including a final adjudication of guilty, does eliminate the privilege. (*Reina v. United States*, 364 U.S. 507, 5 L. Ed. 2d 249, 81 S. Ct. 260 (1960).) But "[t]he conviction here was not final in several aspects. Sentence had not been imposed." (*People v. Hartley*, 22 Ill. App. 3d 108, 109 (1974).) In *Hartley* the court held, with ample authority, that where a defendant had not been sentenced, post-trial motions were pending, and the time for appeal had not expired, the jury verdict was not a final conviction such as to extinguist the defendant's fifth amendment privilege. A defendant is entitled to full protection from the effects of his testimony. (*Halpin v. Scotti*, 415 Ill. 104, 108, 112 N.E.2d 91 (1953).) *Reina* is clearly distinguishable from *Hartley* and the case at bar in that the contemnor in *Reina* was already serving a sentence and there is no indication in that case that any post-conviction remedies were being pursued.

A proper grant of immunity from the use of incriminating testimony can operate to extinguish a witness's privilege against self-incrimination, and can be the basis for a valid order compelling his testimony. (*Kastigar v. United States*, 406 U.S. 441, 32 L. Ed. 2d 212, 92 S. Ct. 1653 (1972).) The statutes of this State provide a procedure where under certain specified circumstances immunity can be granted to a witness and the witness compelled to testify. (Ill. Rev. Stat. 1973, ch. 38, par. 106—3.) Assuming, *arguendo*, that the presentence investigation is part of a trial, the immunity statute was not complied with in two important respects. First, the trial judge granted immunity to Coleson on its own motion rather than on motion of the State, and secondly, Coleson was the defendant, not a material witness. A grant of immunity under statutory authority must be in strict compliance with the terms of the statute. (*People v. Rockola*, 339 Ill. 474, 171 N.E. 559 (1930).) In *Rockola* the Supreme Court reversed a contempt adjudication which was based on a refusal to testify after an invalid grant of immunity. The statute in that case empowered the court to grant immunity in investigations or trials for certain specified offenses, including the crime of bribery. The grant of immunity was held invalid in *Rockola* because the offense charged in the trial was conspiracy to commit bribery, not the offense itself.

■■ Having decided that the immunity granted by the trial judge was not within his statutory authority, there remains the question of a court's inherent power to grant immunity. The courts of this State have no such power. (*People v. English*, 31 Ill. 2d 301, 201 N.E.2d 455 (1964).) The removal of the privilege against self-incrimination by a grant of immunity may only be accomplished by the legislature. (*Apodaca v. Viramontes*, 53 N.M. 514, 212 P.2d 425, 13 A.L.R.2d 1427 (1949); *English.* In the words of Judge Cardozo:

"The grant of an immunity is in very truth the assumption of a legislative power * * *. It is the assumption of a power to annul as to individuals or classes the statutory law of crimes, to stem the course of justice, to absolve the grand jurors of the county from the performance of their duties, and the prosecuting officer from his." *Doyle v. Hofstader*, 257 N.Y. 244, 261-62, 177 N.E. 489, 495 (1931).

Aside from the legal invalidity of the trial judge's grant of immunity, the protection granted was wholly inadequate to protect the defendant against the effects of his statements. A grant of immunity, to be valid, must be co-extensive with the fifth amendment privilege *it purports to remove.* (*Counselman v. Hitchcock*, 142 U.S. 547, 35 L. Ed. 1110 (1892); *Kastigar v. United States.*) In this case the grant of immunity did not protect Coleson from the imposition of a harsher sentence as the result of his testimony, nor is it clear that the information obtained would not be used against him in the event of a retrial.

Another ground on which the lower court seems to have based its judgment are the disclosure limitations imposed upon information obtained in the presentence investigation. Such information may be provided to the sentencing judge, the prosecutor, officials of a penal institution, and anyone else "as ordered by the court." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—3—4.) We do not comprehend, and the State gives us no legal or logical suggestion, how limited disclosure could serve to remove the privilege against self-incrimination.

■■ The fact the court ordered Coleson to communicate with the probation officer after overruling the fifth amendment plea does not affect the outcome of this case. As the State contends, all orders and judgments of courts must be complied with promptly, even if believed incorrect. (*United States v. United Mine Workers of America*, 330 U.S. 258, 91 L. Ed. 884, 67 S. Ct. 677 (1947).) But that general rule does not apply where the order is to reveal information which is asserted to be self-incriminating. (*Maness v. Meyers*, 419 U.S. 449, 464, 42 L. Ed. 2d 574, 586-87, 95 S. Ct. 584, 594 (1975).) The situation is different in that instance because of the possibility of irreparable injury from compliance. Thus, in the area of the fifth amendment, precompliance review may properly be sought, and if the privilege is later held to prevail, the violation of the order no longer supports a contempt citation. *Maness v. Meyers.*

The final ground on which Coleson's privilege could have been extinguished is that the information obtained by the probation officer would not have been voluntarily provided, and thus subject to subsequent suppression.

In the words of Chief Justice Burger:

"Here the 'cat' was not yet 'out of the bag' and reliance upon a later objection or motion to suppress would 'let the cat out' with no

assurance whatever of putting it back." (*Maness v. Meyers*, 419 U.S. 449, 463, 42 L. Ed. 2d 574, 586, 95 S. Ct. 584, 593.)

(See also *Ellis v. United States*, 416 F.2d 791, 796 (D.C. Cir. 1969).) We cannot hold that a court may lawfully compel testimony because the compulsion would be the basis for a subsequent exclusion. Such circular reasoning would destroy the very protection which is guaranteed by the fifth amendment.

■■■ The final issue with which we are faced is whether a lawyer can be held in contempt of court for offering good faith advice to his client to disobey a court order. Since we hold that the advice given was correct, the judgment against Hogan must be reversed along with the judgment against Coleson. But we feel an obligation to go further than to base our decision as to attorney Hogan on that alone. It is extremely important that we express clearly and unequivocally that the contempt adjudication against Hogan would be reversed even if his advice were incorrect.

As a general rule, orders of courts must be complied with until reversed on appeal. (*United States v. United Mine Workers*, 330 U.S. 258, 91 L. Ed. 884, 67 S. Ct. 677 (1947).) Moreover, it is improper, and in certain circumstances contemptuous, for an attorney to advise a client to disobey a court order. (*Maness v. Meyers*, 419 U.S. 449, 42 L. Ed. 2d 574, 95 S. Ct. 584, 591 (1975).) "When a court * * * orders a witness to reveal information, however, a different situation may be presented." (*Maness v. Meyers*, 419 U.S. 449, 460, 42 L. Ed. 2d 574, 584, 95 S. Ct. 584, 592.) The procedure counseled in this case was the ordinary and proper course for achieving precompliance review of a fifth amendment claim. (*Maness v. Meyers*, 419 U.S. 449, 462-63, 42 L. Ed. 2d 574, 585-86, 95 S. Ct. 584, 593.) We regard *Maness* as controlling on this issue, for the Supreme Court held that an attorney may not be penalized for good faith advice to disobey a court order on the ground of the fifth amendment privilege against self-incrimination. (*Maness v. Meyers*, 419 U.S. 449, 464-65, 42 L. Ed. 2d 574, 587, 95 S. Ct. 584, 594-95.)

■■ The right to assistance of counsel in a criminal case is guaranteed by the sixth amendment to the United States Constitution and by article I, section 8 of the Illinois Constitution. Any restriction on the rights of a lawyer to give advice seriously impairs the constitutional right of a client to receive that advice, and denies the client due process of law. (*Powell v. Alabama*, 287 U.S. 45, 60, 69, 77 L. Ed. 158, 166, 170-71, 53 S. Ct. 55, 61, 64 (1932).) Contempt adjudications like the one below serve to chill the effective and unfettered representation which attorneys are bound to provide their clients. We would not hesitate to reverse the contempt adjudication of an attorney for offering a client good faith, albeit incorrect, advice to disobey an order for the disclosure of information, on the ground of the privilege against self-incrimination.

Appellants also contend that the evidence introduced at trial was not sufficient to support a finding of contempt under Counts II and III of the rule to show cause. The trial judge alleged in Count II that because the civil complaint filed by the appellants against the circuit court and three of its judges, which was based on the theory that the circuit court had required Coleson to post excessive bail in the criminal proceeding, could have been filed after the sentencing of Coleson in the criminal proceeding, the filing of the complaint before the sentencing obstructed justice and was thus in contempt of the circuit court. The trial judge alleged in Count III that because the complaint had no basis in fact or law, and because the complaint was not filed in good faith, but for the purpose of embarrassing the circuit court, the filing of the complaint was contemptuous.

Prior to Coleson's indictment, substantial controversy had existed concerning bail procedures in Alexander County. This controversy had resulted in the filing of civil litigation in the United States District Court against some of the judges and other officials of Alexander County. The Court of Appeals for the Seventh Circuit ruled that a cause of action had been stated in that litigation. (*Littleton v. Berbling*, 468 F.2d 389 (7th Cir. 1972).) On review, the United States Supreme Court reversed, holding that the plaintiffs lacked standing in that most of them had never been charged with an offense. As to those plaintiffs who had been prosecuted in the past, the Supreme Court held that lacked standing to complain because their prosecutions had terminated with the filing of suit. *O'Shea v. Littleton*, 414 U.S. 488, 38 L. Ed. 2d 674, 683, 94 S. Ct. 669 (1974); *Spomer v. Littleton*, 414 U.S. 514, 38 L. Ed. 2d 694, 94 S. Ct. 685 (1974).

Hogan claimed that prior to the time of Coleson's sentencing, bail practices similar to those attacked in the *O'Shea* and *Spomer* litigation still existed. Essentially, Coleson alleged that he had been denied assistance of counsel at his bail hearing, had been placed under a $1000 bond, and had been denied the opportunity to show his entitlement to release on his own recognizance. It was Hogan's stipulated testimony in the contempt hearing that after reading the United States Supreme Court cases of *O'Shea v. Littleton* and *Spomer v. Littleton*, he concluded that a plaintiff in a civil action challenging bail practices would lose standing to litigate once he was sentenced and his bail deposit returned.

With reference to Counts II and III of the contempt citation, the presiding judge did not find that the complaint was contemptuous in and of itself because of the language used, but rather that it was totally lacking in merit; that it could have been filed after sentencing rather than before and therefore it was filed solely for the purpose of obstructing justice. The only evidence introduced to sustain the charges was a transcript of the criminal proceedings, the complaint in the civil proceeding and the

verified rule to show cause filed by the trial judge. At the hearing before the presiding judge, the State agreed that the only evidence it had to prove that the complaint was not filed in good faith, but rather was filed to "disrupt or embarrass the court," was the verified rule to show cause.

However, because the appellants were not charged with committing a direct criminal contempt in the physical presence of the judge, the trial judge's verified rule to show cause was not evidence against the appellants. (See *In re Oliver*, 333 U.S. 257, 92 L. Ed. 682, 68 S. Ct. 499; *People v. Skar*, 30 Ill. 2d 491, 198 N.E.2d 101.) Therefore, if we are to sustain the trial court's order, we must do so solely on the basis that the filing of the complaint prior to sentencing was filed with the intent to obstruct justice. We point out that contempt may be committed by incorporating impertinent, scandalous, insulting or contemptuous language reflecting on the integrity of the court in pleadings, motions and notice of motions. (*People v. Sherwin*, 334 Ill. 609; *People v. Richardson*, 397 Ill. 84.) However, we further observe the trial court's order did not find that there was any such language in the complaint. The trial court's order must be sustained upon the ground on which it was imposed or not at all. *People v. Miller*, 51 Ill. 2d 76, 281 N.E.2d 292.

We are therefore not faced with a situation where language contained in the complaint is sufficient to furnish an evidentiary basis for a contempt conviction, but rather a situation where the State must prove beyond a reasonable doubt by extrinsic evidence that the defendant filed the complaint with intent to obstruct justice. The record reflects that the State introduced no evidence whatsoever in support of these charges other than the verified contempt citation.

This case was tried on the theory that it was an indirect contempt. In our opinion, the charges made against the defendant were not of indirect contempt, but rather of direct contempt committed in a constituent part of the court outside the presence of the judge.

■■    There are two classes of direct contempt. One consists of acts that are performed in the physical presence of a judge, so that the judge sees and hears for himself all the elements of misconduct which are later charged against the defendant has having been contemptuous. The other category of direct contempt includes conduct which occurs before a constituent part of a court, but not in the physical presence of a judge. (*In re Oliver; People v. Jashunsky*, 51 Ill. 2d 220, 224, 282 N.E.2d 1, 3; *People v. Skar*.) Contemptuous conduct that falls within the first category may be punished summarily by the judge. (*In re Oliver; People v. Skar*.) Allegedly contemptuous behavior which falls within the second category of direct criminal contempt must be established by extrinsic evidence at a fair and impartial hearing. (*In re Oliver; People v. Skar*.) When a

contempt of this kind is charged against a defendant, the State must prove beyond a reasonable doubt that the defendant commited the contempt. *People v. Skar; People ex rel. Chicago Bar Association v. Barasch,* 21 Ill. 2d 407, 412, 173 N.E.2d 417, 420; *City of Chicago v. Hart Building Corp.,* 116 Ill. App. 2d 39, 253 N.E.2d 496.

The filing of documents with a court is behavior which occurs in the constructive presence of the court and is therefore a direct contempt of the second category if either the documents or the act of filing is regarded as contemptuous. (*People v. Jashunsky; In re Estate of Kelly,* 365 Ill. 174, 6 N.E.2d 113; *People v. Andalman,* 346 Ill. 149, 178 N.E. 412.) Thus the charges against the appellants under Counts II and III of the rule to show cause, which were based on the filing of the complaint with the circuit court, should have been for a direct contempt of the second category instead of for an indirect contempt. The proof necessary to establish the contempt charges, however, is the same regardless of whether the charges are considered to be for an indirect contempt or a direct contempt of the second category, because extrinsic evidence is necessary to substantiate the charges under either theory.

The proceeding against the appellants on the contempt charges was criminal, rather than civil, proceeding because the object of the proceeding was to punish the appellants. *American Cyanamid Co. v. Rogers,* 21 Ill. App. 3d 152, 314 N.E.2d 679; *Eastman v. Dole,* 213 Ill. App. 364.

■■■ A criminal contempt is a crime in every fundamental respect. (*Bloom v. Illinois,* 391 U.S. 194, 201 *rev'g* 35 Ill. 2d 255, 220 N.E.2d 475.) Because a criminal contempt is a crime, it consists of the two basic parts of a criminal offense; that is, a mens rea and an actus reus. The mens rea required for criminal contempt is an intent "to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute." (*In re Estate of Melody,* 42 Ill. 2d 451, 452, 248 N.E.2d 104; see also *United States v. Seale,* 461 F.2d 345 (7th Cir. 1972).) The actus reus of a criminal contempt is an act which does embarrass, hinder, or obstruct a court in the administration of justice. *In re Estate of Melody;* see also *United States ex rel. Robson v. Oliver,* 470 F.2d 10 (7th Cir. 1972).

■■ In order to sustain the trial court's order entered pursuant to Counts II and III of the rule to show cause, the State had to prove beyond a reasonable doubt that the appellants filed the civil complaint with the intent "to embarrass, hinder, or obstruct" the circuit court in the administration of justice. Since there is no valid evidence to support the trial court's finding, the order of the trial court finding the defendants guilty on Counts II and III of the citation must also be reversed.

684

For the foregoing reasons the judgment of the circuit court of Alexander County finding the defendants guilty of contempt of court is reversed.

Judgment reversed.

CARTER, J., concurs.

Mr. JUSTICE JONES, dissenting:

In their zeal to assure the full protection of the constitutional right to the representation of counsel the majority has glossed over and disregarded a case of true, glaring and flagrant contempt of court.

I have no quarrel with the reversal of the contempt finding as to Mr. Coleson on any count or as to attorney Hogan with regard to Count I. However, I disagree with the majority's reversal of the finding of contempt by attorney Hogan under Counts II and III and I accordingly respectfully dissent.

The majority opinion reverses the conviction of attorney Hogan as to Counts II and III because of their finding that there was no evidence that attorney Hogan filed the civil complaint for damages against Judge Kunce with an "intent to obstruct justice." The majority premise their discussion of attorney Hogan's contempt under Counts II and III of the citation with the statement that: "* * * the State must prove beyond a reasonable doubt by extrinsic evidence that the defendant filed the complaint with intent to obstruct justice." This is not the applicable standard in Illinois and is a misstatement of the law. Although they refused to apply the rule to attorney Hogan under Counts II and III the majority properly stated earlier in their opinion that contempt of court is generally defined as conduct calculated to embarrass or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute. (*People v. Jashunsky*, 51 Ill. 2d 220, 282 N.E.2d 1; *In Re Estate of Melody*, 42 Ill. 2d 451, 248 N.E.2d 104.) The majority opinion ignores a consideration of the acts of attorney Hogan with regard to this standard and applies instead a rule they presumably have taken from *United States v. Seale*, 461 F.2d 345 (7th Cir. 1972). In the *Seale* case the court discussed whether the acts of the respondent there came within the ambit of a *Federal statute* dealing with contempt. The statute is 18 U.S.C. §401(1) (1970) and it provides that a district judge has power to summarily punish "[m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." The Federal statute lists four requirements to support a contempt conviction: (1) the conduct must constitute misbehavior; (2) the

misbehavior must rise to the level of an obstruction to the administration of justice; (3) the conduct in question must be in the court's presence or so proximate that it obstructs the administration of justice, and (4) there must be an intent to obstruct.

It thus appears that the majority has lifted their requirement for a finding of contempt from the second and fourth elements of contempt under the Federal statute. Such criteria are without precedent in Illinois and inject an entirely new standard for determining whether contempt of court has been committed.

Developing the improper standard for establishing contempt, the majority state that there are two basic parts to criminal contempt, "a *mens rea* and an *actus reus.*" They cite *Estate of Melody, Seale,* and *United States ex rel. Robson v. Oliver,* 470 F.2d 10 (7th Cir. 1972), as authority for their description of the *"mens rea"* and *"actus reus"* required for a contempt finding. The cases cited neither discuss nor make any reference to a *"mens rea"* or *"actus reus"* aspect of contempt.

Even if the criteria of the Federal statute governed here, the majority disregarded the general rule for finding intent. The Illinois rule is that intent is a state of mind, and, if not admitted, can be shown by surrounding circumstances. (*People v. Koshiol,* 45 Ill. 2d 573, 262 N.E.2d 446.) Intent must ordinarily be proved circumstantially, by inferences drawn from conduct appraised in its factual environment. (*People v. Johnson,* 28 Ill. 2d 441, 192 N.E.2d 864.) And under the Federal statute the rule for determining whether the requisite intent exists is similar to that in Illinois as shown by the following from the *Seale* case:

> "The minimum requisite intent is better defined as a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful. [Citations.] Of course, an actual design to subvert the administration of justice is a more grievous and perhaps more culpable state of mind, but proof of such an evil motive is unnecessary to establish the required intent. [Citation.]
>
> Certainly, the most obvious source from which this intent can be ascertained is the trial transcript. [Citations.] Indeed, some conduct depicted therein will itself carry sufficient indicia of intent to satisfy the Government's burden of proof on this issue." 461 F.2d 345, 368-69.

The Rule to Show Cause which Judge Kunce filed asserted that the complaint for civil damages filed by attorney Hogan on behalf of Coleson was not filed in good faith to obtain the relief prayed for, but so as to hinder, delay or impede the administration of criminal justice and to interfere with judicial processes and embarrass the court so as to lessen the court's dignity and authority.

I believe the assertions of the Rule were well founded in law and established in fact and that attorney Hogan was properly found guilty of contempt and the judgment of the trial court should be affirmed.

The contemptuous act of attorney Hogan was his serving as attorney for Coleson in the filing of a civil suit for damages against Judge Kunce before whom Coleson was being prosecuted for the crime of perjury, while that criminal case was still pending. Such action is without question a direct attack upon the integrity of the court. The act speaks for itself and was obviously calculated to embarrass, hinder and obstruct the court in its administration of justice and did derogate from its authority and dignity and bring the administration of law into disrepute.

The majority assert in their opinion that the State introduced "no evidence whatsoever" in support of the charges other than the verified contempt citation. But that is not true. The record shows that the civil complaint for damages against Judge Kunce was attached to and incorporated in the Rule to Show Cause that contained the charges of contempt made against attorney Hogan, and that this complaint was admitted into evidence by stipulation of the parties. Moreover, throughout the contempt hearing attorney Hogan, through his attorney, admitted the filing of the complaint against Judge Kunce while the criminal case against Coleson was pending. No further evidence of attorney Hogan's contempt is required.

In this case written specifications of the acts constituting the contempt were filed (the Rule to Show Cause), respondent Hogan was notified, and a hearing was held at which Hogan was present and represented by counsel. After filing the Rule to Show Cause Judge Kunce properly recused himself from the case and it was assigned to another judge who conducted the hearing. Thus, attorney Hogan was accorded due process of law in this proceeding. *People v. Skar*, 30 Ill. 2d 491, 198 N.E.2d 101; *Mayberry v. Pennsylvania*, 400 U.S. 455, 27 L. Ed. 2d 532, 91 S. Ct. 499; *United States v. Seale.*

Admittedly the language used in the complaint for civil damages was not per se contemptuous—but that is not the nexus of the contemptuous act. We are not concerned here with the rule which holds that the mere filing with the clerk of the court any document containing contemptuous matter is sufficient to constitute direct contempt as in *In re Estate of Kelly*, 365 Ill. 174, 6 N.E.2d 113.

The civil suit for damages which attorney Hogan filed on behalf of Coleson arose out of alleged grievances over the fixing of bail bond in the case of Coleson's prosecution. But Judge Kunce did not fix any bond and had no part in fixing any bond; neither did he consider any motion nor make any ruling regarding Coleson's bond. This is reflected in the civil suit for damages filed against Judge Kunce by attorney Hogan on behalf

of Coleson. That suit named the State's Attorney of Alexander County, two other judges in addition to Judge Kunce (who was named "individually, as tort feasor, and, as judge of the First Judicial Circuit Court of Illinois") and the circuit clerk of Alexander County. Paragraphs 6, 7 and 8 of that complaint contained the only reference to Judge Kunce and they were as follows:

"6. That on June 28, 1973, at arraignment, the Hon. Peyton Kunce, acting without sufficient legal authority with knowledge of the state of the record in 73—CF—11 and 73—CF—22, and, in excess of his authority as Judge purported to exercise the administrative authority of the Illinois Supreme Court to effect an administrative flowing together of cases 73—CF—11 and 73—CF—22, cases he knew to be substantially different as to subject matter and parties.

7. That at the time the Honorable Peyton Kunce purported, on June 28, 1973, to exercise the administrative authority aforesaid, the Honorable Roy O. Gulley, Administrator of the courts of the State of Illinois, either had not authorized the Honorable Peyton Kunce to so act, or, if authorization was given to the Honorable Peyton Kunce it was invalid and without delegation or other basis in law.

8. That the purported exercise of administrative authority by the Hon. Peyton Kunce was also, at the instigation of the Hon. W. C. Spomer and was an aggravation of and a knowing continuation of the wrongful attachment and false imprisonment of the substantial portion of Plaintiff's person alleged in paragraph 2 above."

It is readily apparent from these allegations that attorney Hogan and Mr. Coleson could have litigated their bond issue without Judge Kunce as a party defendant since Kunce never took any part in the bond fixing process. The sole allegation against Judge Kunce was that he "purported to exercise the administrative authority of the Illinois Supreme Court to effect an administrative flowing together of cases 73—CF—11 and 73—CF—22 * * * ." In short, Judge Kunce granted the State's motion to consolidate. For this, he was sued for damages in a civil case, while consolidated cases 73—CF—11 and 73—CF—22 were yet pending before him, for $100,000. The action of attorney Hogan in filing the civil complaint was a patent absurdity and he should be held accountable for his attack against the court. If Coleson was innocent of the perjury charge, if the court before whom he appeared erred, even grievously so, if a miscarriage of justice had occurred, then plainly Coleson had his remedy in his right to appeal and attorney Hogan, representing Coleson, well knew this. Bringing a civil suit for damages against a judge because of his ruling in a pending case is not an available mode of relief for a litigant.

While the judiciary may be subject to just criticism for their rulings and behavior, they enjoy immunity from civil suits based upon their judicial actions. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L. Ed. 646; *In re Mason*, 33 Ill. 2d 53, 210 N.E.2d 203; *People ex rel. Chicago Bar Association v. Standidge*, 333 Ill. 361, 164 N.E. 844.

We need not be concerned with whether attorney Hogan filed a complaint with intent to hinder, impede or embarrass the court, or to derrogate from its authority or dignity, or bring the administration of law into disrepute. It is well settled that whether a direct contempt has been established depends upon the action and not the alleged intention of the offending party. (*People v. Denson*, 59 Ill. 2d 546, 322 N.E.2d 464; *Anderson v. Macek*, 350 Ill. 135, 182 N.E. 745; *Kneisel v. Ursus Motor Co.*, 316 Ill. 336, 147 N.E. 243.) The *Anderson* and *Kneisel* cases are particularly apt since they involved acts constituting a direct contempt occurring outside the presence of the court.

Courts should require that practicing attorneys have a higher regard for administration of justice than that which is required of laymen. (*In re Estate of Kelly*.) Attorney Hogan's conduct in the filing of this civil suit for damages is so flagrant and outrageous that no precise precedent can be found. Clearly the filing was not in good faith as to Judge Kunce since he had nothing to do with the bond in Coleson's case. The only conclusion which can be drawn from the flagrant misbehavior of attorney Hogan is that it was deliberately calculated to impede the orderly administration of justice. His conduct assailed the dignity and authority of the court, and it possessed the inherent power to punish him for contempt. I would affirm the finding of contempt against attorney Hogan under Counts II and III of the Rule to Show Cause.