(No. 16656.— )

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* HARRY W. STANDIDGE, Respondent.

*Opinion filed December 20, 1928.*

JOHN L. FOGLE, (ERWIN W. ROEMER, of counsel,) for relator.

HARRY W. STANDIDGE, *pro se*.

Per CURIAM: An information on the relation of the Chicago Bar Association was filed by leave of this court against Harry W. Standidge, the respondent, charging him with unprofessional conduct and praying that he be disbarred, suspended or otherwise disciplined. The allegations of the information are: The respondent was admitted to practice as an attorney and counselor at law by this court on or about June 5, 1897, and he has practiced law since in the city of Chicago. Prior to September 13, 1923, he claimed to be rightfully entitled to a lease of the top or twenty-first floor of the City Hall Square building, in Chicago, and was engaged in a controversy with the City Hall Square Company, a corporation, the owner of the building, with respect to the claim. On that day he filed in the circuit court of Cook county a bill to enjoin the owner from interfering with his occupancy of the premises and to compel the owner to execute and deliver to him a lease of the premises from July 1, 1923, which lease he claimed he had already executed on his part. An answer and a cross-bill were filed by the owner, and after a hearing the circuit court granted the cross-complainant a preliminary injunction restraining the respondent from conducting public dances in the demised premises. The respondent prosecuted an appeal from the interlocutory order to the Appellate Court for the First District and the cause was assigned to the Third Division of that court, of which the Hon. Thomas Taylor, the Hon. John M. O'Connor and the Hon. Charles M. Thomson were the judges. The court filed an opinion in which it reviewed the evidence at length and found that the respondent's use of the demised premises was inconsistent with the provisions of the lease by which

he held possession and affirmed the order of the circuit court. A petition for a rehearing was denied. Thereafter the respondent instituted suit in the superior court of Cook county against the three judges of the Appellate Court, claiming damages in the sum of $100,000. The declaration consisted of seven counts. These counts charged, in substance, that it was the duty of the defendants, in stating the reasons for their decision, to refrain from "negligently, wrongfully, improperly, willfully, wantonly, maliciously and corruptly" making statements and findings without any legal basis, but that in rendering their opinion they did so in violation of their oaths of office. Certain statements and findings contained in the Appellate Court's opinion were set forth in the declaration, and it was alleged that these statements and findings made known to the world that the testimony introduced by the plaintiff was untrue. The defendants filed a general demurrer to the declaration and the demurrer was sustained. The respondent thereafter amended his declaration, and, among other things, alleged that the wrong done him would not have been committed if the court had not, as the respondent believed, manifestly exceeded its authority in making findings on the merits of the cause upon the interlocutory appeal. A demurrer was filed to the declaration as amended. The respondent further amended his declaration by striking certain paragraphs from each count and inserting allegations that the defendants in their written opinion made false statements and findings as originally charged, without jurisdiction. A general and special demurrer to the declaration as finally amended was sustained and the suit was dismissed. The information concludes with the charge that the acts of the respondent were unprofessional and calculated to bring the courts of justice into disrepute and contempt and to tarnish the good name and fame of the legal profession.

The respondent filed an answer to the information. In it he avers that he brought the suit as an individual and

not as an officer of the court; that after sustaining the demurrer to his declaration as amended the superior court adjudged costs against him; that he prosecuted an appeal from that judgment to the Appellate Court for the First District; that the demurrer filed to his declaration as amended admitted that he had a valid cause of action against the defendants, and that the relator sought to deprive him of his right, as an individual, to a fair hearing of that cause in the Appellate Court by prosecuting an information to disbar him on a different record. Much of the answer is devoted to a discussion of the facts as, the respondent claims, they appeared in the case in which the preliminary injunction was granted. The respondent further avers in his answer that on an appeal from an interlocutory order granting a preliminary injunction the Appellate Court has no jurisdiction to pass upon the merits of a cause, and if it does so, even the appellant is not bound by its action; that the findings in the opinion of the Appellate Court not only had no place on the appeal from the interlocutory order, but that they were false and inflicted a great and unjustifiable wrong upon him and that they subjected the judges who made them to a civil action for damages.

The respondent by his answer does not deny the facts alleged in the information but seeks to justify his conduct. The merits of the controversy between the respondent and his landlord need not be considered in this proceeding. The question to be determined is whether, by instituting a suit against the judges of the Appellate Court who on his appeal affirmed the interlocutory order of the circuit court, and charging them, in the decision of the appeal, with willfully, wantonly and corruptly making false findings against him, the respondent was guilty of unprofessional conduct.

The Appellate Court, the respondent contends, in its review of an interlocutory order is a court of limited jurisdiction, and when on such a review it exceeds that juris-

diction, the members of the court are amenable to a civil suit for damages by the litigant affected. Section 123 of the Practice act (Cahill's Stat. 1927, p. 1958; Smith's Stat. 1927, p. 2104;) provides that when an appeal is taken from an interlocutory order or decree granting an injunction, the force and effect of the order or decree and the proceedings in the court below shall not be stayed during the pendency of the appeal, but that upon the filing of the record in the Appellate Court the appeal shall be docketed, and that court may affirm, modify or reverse such interlocutory order or decree and shall direct such proceedings to be had in the court below as the justice of the case may require. An interlocutory injunction is merely provisional in its nature and does not conclude a right. It usually stands as a binding restraint until rescinded by the further action of the court. Its object is to preserve the subject in controversy, but it is not decisive of the cause upon the merits. The court merely recognizes the fact that, without expressing a final opinion, a sufficient showing has been made to warrant the preservation of the property or the rights in issue *in statu quo* until a hearing may be had upon the merits of the cause. The granting of an interlocutory injunction necessarily rests largely in judicial discretion, to be exercised in view of the facts of the particular case. 1 High on Injunctions, (4th ed.) secs. 4, 5, 5*a*, 11; 2 Words and Phrases, (2d series,) pp. 1149, 1150; 14 R. C. L. p. 312; *Penkala* v. *Tomczyk,* 317 Ill. 356; *Baird* v. *Community High School District,* 304 id. 526.

The section of the Practice act to which reference has been made provides for the filing of the record and for a hearing. Obviously, the purpose of filing the record is that it may be considered on the appeal. The hearing is judicial in its nature. The respondent recognized that fact by filing in the Appellate Court an abstract of the record upon which the chancellor acted and a brief and argument in support of his contentions. The statute authorized the

Appellate Court to direct the trial court to proceed "as the justice of the case may require." Hence it was clearly within the jurisdiction of the Appellate Court, in reviewing the interlocutory order from which the appeal was taken, to consider the evidence upon which the order was based. Such a consideration was necessary to determine whether the issuance of the preliminary injunction was justified. The Appellate Court had authority to review the appeal which the respondent brought to it. The question presented by the appeal was a preliminary one, and the Appellate Court's judgment affirming the interlocutory order was not decisive of the cause as it might ultimately be submitted to the circuit court. The opinion of the Appellate Court did not preclude the parties to the injunction suit from prosecuting and defending it to its final determination, and that court did not, in its consideration of the interlocutory appeal, exceed its jurisdiction.

The record fails utterly to support the charge that the judges of the Appellate Court, in rendering their opinion, willfully, wantonly and corruptly made false statements and findings against the respondent. The opinion evinces careful consideration of the evidence upon which the order for the preliminary injunction was based. Neither as an individual nor as an attorney and counselor at law was the respondent justified in bringing an action for damages against the Appellate Court judges.

The respondent failed to show the slightest illegality, or even irregularity, on the part of the judges of the Appellate Court in deciding his appeal. The judges merely performed their duty, and when he instituted the suit for damages against them and charged that they willfully, wantonly and corruptly made false statements and findings against him, he demonstrated a complete lack of the proper conception of his duties and responsibilities as a member of the bar. The first canon of ethics of the legal profession makes it the duty of a lawyer to maintain toward the courts

a respectful attitude, not for the sake of the temporary incumbent of the judicial office but because the proper maintenance of that office is of supreme importance. It should never be possible to say that judges cannot be held responsible civilly for their acts in the absence of all jurisdiction of the subject matter, for such a doctrine contains the seeds of oppression; but it is of the greatest importance to the welfare of the people that for acts within his jurisdiction the judge should be immune from attack in a civil proceeding. It is his duty to hear and decide cases that involve not only property, but even liberty and life itself. His decisions not infrequently incite a feeling of bitterness and the defeated litigant readily ascribes improper motives to the judge. If under such circumstances that officer may be harassed by a civil suit, judicial independence, which is essential to the rights and liberty of the citizen, will be swept away. In *Bradley* v. *Fisher,* 80 U. S. 335, an attorney defending John H. Suratt, charged with the murder of Abraham Lincoln, threatened the presiding judge with personal chastisement. The judge struck counsel's name from the roll of attorneys practicing in the court. The attorney brought suit against the judge for damages. In holding that the defendant was exempt from liability in a civil action for acts done by him in the exercise of his judicial functions the Supreme Court of the United States said: "For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful."

The respondent's act in bringing the suit, his attitude toward the judges who rendered the decision and his char-

acterization of the opinion rendered constitute a violation of his duties and obligations as an attorney at law. While the ends of justice do not require that his name be stricken from the roll of attorneys of this court, yet his conduct was reprehensible and deserves punishment. He will therefore be suspended from practice as an attorney and counselor at law within this State for the period of six months from the filing of this opinion. *Respondent suspended.*