THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH LUCAS, Defendant-Appellant.

First District (2nd Division)    No. 79-1070

Opinion filed September 16, 1980.—Rehearing denied October 14, 1980.

944

Sam Adam, Marvin Bloom, and Arnette R. Hubbard, all of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Barry S. Pechter, Assistant State's Attorneys, of counsel), for the People.

On rehearing, Mr. JUSTICE DOWNING delivered the opinion of the court:

Following a bench trial, defendant Kenneth Lucas (defendant) was convicted of murder and armed robbery (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1 and 18—2, respectively) and was sentenced to concurrent terms of 25 years and 15 years, respectively. Defendant appeals.

In his appeal to this court, defendant set forth the issue for review as: "whether the Court erred in denying the appellant's motion to suppress statements and physical evidence." We are actually asked to determine whether the trial court was in error in failing to find that: (1) there was no probable cause for defendant's arrest, (2) the State violated his rights in delaying presentation of defendant to a judge for a probable cause determination, and (3) the search of his home without a warrant was illegal. Defendant maintains that any statements or physical evidence obtained as a consequence of these alleged illegal acts should have been suppressed.

On August 18, 1977, at approximately 4 a.m., the victim, Thomas Eberhart, was shot and killed in the vicinity of 1034 East 76th Street, Chicago. The victim's car was found in a lot at 76th and Langley, which we note is about six blocks from the scene of the shooting.

At a pretrial hearing on his motion to suppress, defendant testified that at 8 p.m. on the aforesaid date, he was in a poolroom with Derrick Fenner[1] and Arthur Connelly. Defendant said that he had just come out of the washroom and rejoined his companions when some police officers walked up to them and asked each his name. The three were then arrested, taken to a police station, and placed in separate rooms. Defend-

---

[1]Derrick Fenner entered a plea of guilty to murder.

ant was periodically questioned and at approximately 9 a.m. the following day, he gave an oral statement which was reduced to a signed written document that afternoon. During the period between the making of the oral statement and its reduction to written form, defendant was taken by the police to his home, where property related to the crime was retrieved. Defendant related that he told the police he would give them this property.

The State called Officer Daniel E. Swick, who testified that he investigated the death of the victim. He learned from police reports that more than one male Negro was seen leaving the scene of the shooting. Two male Negroes were seen in and around the victim's car where it was abandoned. A bond slip bearing the name of Derrick Fenner was found at the scene. Swick obtained a photograph of Fenner and went to the poolroom. Initially, the officer and his partner talked with Fenner. While doing so, defendant walked up to them and asked what was going on. When the officer said that they were taking Fenner to the police station in regard to a shooting which had occurred that morning, defendant said that Fenner could not have been involved in any shooting because he had been with defendant all that day as well as the day before. The officers then took both men to the station.

On cross-examination, Swick related that the bond slip bearing Fenner's name, address, date of arrest, charge, and court date was found in some weeds near the car. He further admitted that he did not have any other information to relate Fenner to the crime when he went to the poolroom.

The trial court denied defendant's motion and the case proceeded to trial by stipulation.

Through a series of evidentiary stipulations, the State's evidence showed that the victim was seen alive on the evening of August 17; that at 4 or 5 a.m. on August 18, voices and some gunshots were heard and a black Cadillac-type vehicle containing several male Negroes was seen leaving the scene at a high rate of speed. Shortly thereafter, the car was seen several blocks away in a lot where it was stuck; several young men were walking around it. A bond slip issued to Derrick Fenner was found in the area near the abandoned car; and upon investigation of Fenner in a nearby poolroom, defendant approached the officer and told him that he had been with Fenner during the hours in question. Fenner and defendant were then placed under arrest and given *Miranda* warnings.

The stipulated evidence further showed that while being held in custody, defendant told one of the officers that he was with Fenner in the early morning hours of August 18, when the victim gave them a ride in his automobile. They stopped to get some beer, at which time defendant and

Fenner discussed robbing the victim. Once back in the car, defendant, who was sitting behind the victim, pulled out a gun and put it to the victim's head. The victim said, "you are going to have to kill me" and got out of the car and ran. Defendant fired a shot. The gun was then taken from him by Fenner. He fired several more shots at the victim, who fell down by the curb. Both parties removed some of the victim's property from his body, and Fenner fired another bullet into the victim to "make sure he is dead." Defendant and Fenner then got back into the victim's car and drove to the lot where it got stuck and was abandoned.

The stipulated evidence also showed that after making the above statement, defendant was taken by the police to his home, where the officers recovered the murder weapon. This last stipulation was entered subject to the objection of the defense counsel that the motion to suppress had been overruled.

Further stipulations were entered that an autopsy of the victim's body showed that death was caused by nine bullet wounds to the chest, lung, heart, and aorta; that a ballistics test showed the projectiles removed from the body were fired from the weapon recovered at defendant's home; that articles belonging to the victim were recovered from various locations upon information given by defendant. Defendant's written confession, secured after the search of his home, was admitted into evidence together with the other physical evidence.

## I.

Defendant contends that his arrest was illegal in that the arresting police officer lacked probable cause to so act.

■■ Probable cause to arrest exists when the totality of the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution to believe that an offense has been committed and that the person arrested has committed the offense. (*People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228; *People v. Philson* (1979), 71 Ill. App. 3d 513, 519, 389 N.E.2d 1223.) In deciding the question of probable cause in a particular case, the courts deal with probabilities and are not disposed to be unduly technical. These probabilities are the factual and practical considerations of everyday life on which reasonable men, and not legal technicians, act. *People v. Clay* (1973), 55 Ill. 2d 501, 504-05, 304 N.E.2d 280.

■■ Defendant maintains that there was no probable cause to arrest Fenner, thereby defeating any possible basis for probable cause to arrest defendant. Fourth amendment rights, including the right to be free from unreasonable seizure, are personal rights which may not be vicariously asserted. (*Alderman v. United States* (1969), 394 U.S. 165, 174, 22 L. Ed.

2d 176, 187, 89 S. Ct. 961, 966-67.) The proponent of a motion to suppress has the burden of establishing that his own fourth amendment rights were violated by the challenged search and/or seizure. (*Simmons v. United States* (1968), 390 U.S. 377, 389, 19 L. Ed. 2d 1247, 88 S. Ct. 967; see *Rakas v. Illinois* (1978), 439 U.S. 128, 133-34, 58 L. Ed. 2d 387, 394-95, 99 S. Ct. 421, 425.) We are of the opinion that defendant lacks standing to challenge the validity of Fenner's arrest.[2]

Viewing the issue, then, as whether the police acted properly in seizing defendant, we must assess the evidence presented by the State at the motion to suppress hearing which formed the basis of the trial court's ruling. The officers knew that at least two male Negroes were seen driving away from the scene of the shooting in a black Cadillac-type vehicle. The officers further knew that a car of that description, belonging to the victim, was found abandoned in a sandlot several blocks away, and that two Negroes had been seen with it. They also knew that a bond slip issued to Derrick Fenner was found in some weeds near the car.

Using this information, the police sought Fenner and found him in a poolroom. The arresting officer related that as he questioned Fenner, defendant voluntarily interjected himself into the conversation and offered that Fenner had been with him during the time when the crime was committed.[3]

■■ Certainly, an officer of reasonable caution could believe from this volunteered information taken together with the other known facts that defendant might have been involved in the murder of Eberhart. Therefore, we agree with the trial court that the police had probable cause to arrest defendant.

This determination disposes of defendant's contention that all subsequent evidence obtained as a "fruit" of the arrest must be suppressed under the exclusionary rule of *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, reiterated in *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.

At oral argument defendant stated that he relied for this point on *People v. Creach*. In *Creach*, the supreme court held that probable cause

---

[2] As stated in *United States v. Salvucci* (1980), ___ U.S. ___, 65 L. Ed. 2d 619, 625, 100 S. Ct. 2547, 2550, "Subsequent attempts to vicariously assert violations of the Fourth Amendment rights of others have been repeatedly rejected by this Court."

[3] It is noted that defendant claimed at the suppression hearing that he did not interject himself into the conversation, but rather that he was approached and questioned by the officers while already in Fenner's company. It is for the trial judge to determine the credibility of such testimony. (*People v. Bullock* (1970), 123 Ill. App. 2d 30, 34, 259 N.E.2d 641.) We see no reason to disturb its decision to credit the testimony of the police officer over that of defendant.

to arrest one person does not, in itself, constitute probable cause to arrest others present or associating with the individual arrested. Unlike *Creach*, however, the arresting officer in the instant case knew that there were two Negro youths involved in the crime. Here, defendant voluntarily interjected himself into the evidentiary picture by telling the officers that he had been with Fenner during the hours in which the crime was committed. Because of the factual differences, defendant's reliance on *Creach* is misplaced.

## II.

■■ Defendant asserts that the arresting officers acted in clear violation of his constitutional rights and of an Illinois statute when they waited 36 hours before bringing him before a magistrate. In *Gerstein v. Pugh* (1975), 420 U.S. 103, 114, 125, 43 L. Ed. 2d 54, 65, 71-72, 95 S. Ct. 854, 863, 868-69, the United States Supreme Court ruled that the Constitution requires a timely judicial determination of probable cause to arrest as a prerequisite to an extended restraint of liberty following arrest. When a person is arrested without a warrant the determination must be made promptly after arrest. Illinois has such a requirement in statutory form. (Ill. Rev. Stat. 1979, ch. 38, par. 109—1.) It is upon these two bases that defendant raises this issue.

We recognize the constitutional right explicitly asserted by the Supreme Court in *Gerstein*. However, there are no remedial measures mandated by that Court for a violation of that right. The court has, of course, adopted an exclusionary rule applicable in Federal cases which bars the use of evidence derived from an accused when his *Federal statutory* right to speedy determination of probable cause is violated. The rule is commonly referred to as the *McNabb-Mallory* doctrine, after two Supreme Court decisions, *Mallory v. United States* (1957), 354 U.S. 449, 1 L. Ed. 2d 1479, 77 S. Ct. 1356, and *McNabb v. United States* (1943), 318 U.S. 332, 87 L. Ed. 819, 63 S. Ct. 608. Defendant has not pointed out, nor have we discovered, any similar remedy to the *McNabb-Mallory* rule mandated by the Supreme Court for use in a *Gerstein* violation. Further, Illinois has not adopted the *McNabb-Mallory* doctrine for application in *any* State cases. (See *People v. Howell* (1975), 60 Ill. 2d 117, 122, 324 N.E.2d 403.) Therefore, regardless of the merits of defendant's contention here, we find him to be without any basis for relief centered on the constitutional segment of this issue.

Concerning the applicable Illinois statute, section 109—1, we note that it does not contain a remedial provision to be relied upon in case of violation of the statute's mandate. We have not been referred by defendant to any judicially constructed remedy for such violation;

indeed, our supreme court's refusal to adopt *McNabb-Mallory* in any circumstances is a response to attempts to assert its applicability to violations of section 109—1. (*People v. Howell.*) We are thus unable to find any basis for relief for violation of section 109—1, should that have occurred here. See *People v. Walker* (1977), 45 Ill. App. 3d 627, 630-31, 360 N.E.2d 64, *appeal denied* (1977), 65 Ill. 2d 584.

■■■ Thus, defendant must demonstrate that his confession was involuntary if he is to succeed in having it excluded. A delay in presenting a defendant to a judge for a probable cause hearing is one circumstance to be considered in determining the voluntariness of a statement procured during the delay. (*People v. Brooks* (1972), 51 Ill. 2d 156, 165, 281 N.E.2d 326.) Other factors to be considered in determining the voluntariness of a confession are (1) the giving of *Miranda* warnings, (2) the time between the arrest and the confession, (3) the presence of any intervening circumstances, and (4) the flagrancy and purpose of the official misconduct. (*Brown v. Illinois.*) The determination of the question of whether or not a confession is voluntary depends not on any one factor, but upon the totality of the circumstances. (*Culombe v. Connecticut* (1961), 367 U.S. 568, 606, 6 L. Ed. 2d 1037, 1060, 81 S. Ct. 1860, 1881; *In re Lamb* (1975), 61 Ill. 2d 383, 336 N.E.2d 753, *cert. denied* (1976), 425 U.S. 938, 48 L. Ed. 2d 180, 96 S. Ct. 1672.) The trial court's decision on this issue will not be reversed in the absence of manifest error. *People v. Brooks.*

We strongly disapprove of the lengthy delay in presenting defendant to a judge. The State suggests the delay was occasioned by an ongoing investigation. However, the record contains no evidence to support this contention. Our review of the circumstances of this case leads us to conclude that the trial court did not err in rejecting the contention that defendant's confession was involuntary. Defendant was advised of his *Miranda* rights when taken into custody. By his own testimony, defendant admits he was left in a room alone and that the police did not question him constantly through the night. Defendant made no claim of coercion, harassment, or physical abuse. The oral confession was made about 12-13 hours after his arrest. At oral argument before this court defendant's counsel acknowledged that there was no basis in the record on this point to exclude the oral statement. In sum, as to this issue, there is no showing that defendant's "will has been overborne and his capacity for self-determination critically impaired" so as to necessitate reversal of the trial court's decision. *Culombe v. Connecticut* (1961), 367 U.S. 568, 602, 6 L. Ed. 2d 1037, 1057-58, 81 S. Ct. 1860, 1879.

■■ In our opinion, defendant has no basis in the law upon which his statements and other evidence should be excluded due to the delay in presentment for the probable cause hearing.

## III.

Defendant lastly contends that the search of his home without a search warrant was illegal, and that physical evidence taken in the search must therefore be suppressed.

■■ It is axiomatic that the fourth amendment protects a person from unreasonable searches. If it can be shown that the person subject to a search has consented to it, however, even a warrantless search is made reasonable. Once a defendant has made a *prima facie* case that a search is "unreasonable," the State has the burden of going forward with evidence which would demonstrate that consent was in fact freely and voluntarily given. (*Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 20 L. Ed. 2d 797, 802, 88 S. Ct. 1788, 1791-92; *People v. Clark* (1977), 55 Ill. App. 3d 379, 385, 370 N.E.2d 1111, *appeal denied* (1978), 71 Ill. 2d 599.) Voluntariness of consent is a question of fact to be determined from the totality of the circumstances. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248-49, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2059.) The State must demonstrate that the consent is unequivocal and specific as established by clear and positive testimony which shows that there is no duress or compulsion, actual or implied. Every reasonable presumption against waiver is indulged in. *People v. Haskell* (1968), 41 Ill. 2d 25, 31, 241 N.E.2d 430; *cf. People v. Shaver* (1979), 77 Ill. App. 3d 709, 713, 396 N.E.2d 643.

To establish consent, the State in argument to this court relied upon certain answers made by defendant on cross-examination at the motion to suppress hearing and in the written confession. However, we do not interpret these to sufficiently establish a free and voluntary consent of the search of defendant's residence. The trial court did not address the issue of the validity of the search when it ruled upon defendant's motion to suppress. We believe this to be due in part to the fact that defendant put very little emphasis upon this ground for suppression of evidence at the hearing on the motion to suppress, and the State consequently failed to raise any major argument in rebuttal thereto. The record does not demonstrate that this matter was presented to the trial court with the same emphasis and vigor as discussed in this court. Therefore we believe it appropriate to return this case to the trial court for a hearing solely on this issue. At the conclusion of that hearing the trial court shall make such ruling as is appropriate in accordance with the directions in the conclusion of this opinion.

## IV.

■■ As a final matter, we find it necessary to comment in the strongest terms about the manner in which defendant's counsel presented the

petition for rehearing of this case.[4] We will not dignify the petition filed by attorney Sam Adam by reprinting excerpts here. We are nonetheless appalled at its affront to the dignity of this court as an institution. An early supreme court case noted that it is the duty of a lawyer to maintain toward the courts a respectful attitude, not for the sake of the temporary incumbents of the judicial office, but because proper maintenance of that office is of supreme importance. (*People ex rel. Chicago Bar Association v. Standidge* (1928), 333 Ill. 361, 366-67, 164 N.E. 844.) Canon 7 of the recently adopted Illinois Code of Professional Responsibility (Ill. Rev. Stat., 1980 Supp., ch. 110A, art. VIII) contains Rule 7—106, regarding trial conduct. Rule 7—106(c)(6) states that, in appearing in his professional capacity before a tribunal, a lawyer shall not engage in undignified or discourteous conduct which is degrading to the tribunal. It is our firm belief that the petition for rehearing filed by defense counsel exceeds the bounds of said Rule 7—106(c)(6). It displayed a total lack of respect for this appellate court as a branch of the judiciary of this State. We are unable to find justification for such an intemperate display of irresponsibility; indeed, there can be none. As an admonition to this defense counsel in particular and to the practicing bar in general, we wish to reaffirm the demand of our supreme court in *Standidge* that a properly respectful attitude and manner of conduct be adhered to in all stages of functioning in the legal profession. Activities such as that engaged in in this case do nothing to uphold the quality of professionalism to be expected from those engaged in the legal practice.

At oral argument before this court Mr. Adam attempted to justify his petition on the alleged theory that "a petition for rehearing is the only time that a lawyer can give the Appellate Court, the court of review, 'hell' with impunity." We reject such advocacy. We strongly support energetic and zealous adversary representation. However, as all practitioners know, a client's position can be presented in a persuasive but dignified manner. Emotion loses all that objectivity accomplishes.

The Attorney Registration and Disciplinary Commission of this State was established to, amongst other things, review the conduct of the legal profession in the State of Illinois. Accordingly, we refer the petition for rehearing in the instant matter filed by attorney Sam Adam to the Commission.

## Conclusion

The judgment of the circuit court of Cook County is vacated and the cause is remanded for a hearing solely on the issue of whether defendant

---

[4] Rehearing was granted despite the insolence of defense counsel because our initial determination was made without the benefit of oral argument by respective counsel.

waived his constitutional right to be free from unreasonable searches. Upon the conclusion of said hearing the trial court shall enter such order as appropriate. If the trial court concludes defendant consented to said search, it shall thereupon reinstate the original judgment.

Vacated and remanded with directions.

PERLIN, P. J., and HARTMAN, J., concur.