THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* DAVID LENTINI, Defendant-Appellee.

Second District    No. 81-446

Opinion filed May 10, 1982.—Rehearing denied June 22, 1982.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, of counsel), for appellant.

Ralph Gust, Jr., of Lombard, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

The State has taken this interlocutory appeal pursuant to Supreme Court Rule 604(a) (73 Ill. 2d R. 604(a)) from an order of the trial court suppressing the results of blood alcohol tests performed on two blood samples taken from the defendant, David Lentini.

Defendant was charged by indictment filed on February 26, 1981, with the offense of reckless homicide (Ill. Rev. Stat. 1979, ch. 38, par. 9—3(a)) as a result of an automobile collision which occurred in Wheaton, Illinois. On June 5, 1981, defendant filed an amended motion to suppress the results of the blood alcohol analyses. At the hearing on defendant's motion, it was stipulated that two blood samples were taken from the defendant at the Central Du Page Hospital, one at approximately 10:45 p.m. on December 19, 1980, and the other at approximately 12:40 a.m. on December 20, 1980, and that they were taken without benefit of a search warrant. The State assumed the burden of going forward with their evidence based on this stipulation.

Frances Culler, a registered nurse in the emergency room at the Central Du Page Hospital, was the first witness called at the hearing. She was on duty on the evening of December 19, 1980, and examined the defendant at that time. Culler testified as follows concerning the obtaining of the first blood sample:

> "THE WITNESS: Officer Fabrie asked Mr. Lentini if we could obtain a blood specimen at that time for use and he had his uniform on at the time, and he said, I need it for—I don't remember the exact words that he said, but he specifically, I need this specimen for me."

To this request, defendant responded, "Take anything you want." At 12:25 a.m., defendant was again approached by Officer Fabrie for the purpose of obtaining another blood sample since the officer misunderstood that the first blood sample was for medical purposes only. The

officer again said that he needed the blood specimen for himself. Again, defendant responded, "just take anything you want." Officer Fabrie was in uniform and the defendant was quite friendly with him having stated that he thought he recognized him.

On cross-examination, Culler testified that defendant was brought into the emergency room on a stretcher and was wearing a cervical collar. Defendant had minor abrasions on his forehead. He kept falling off to sleep, but he was easily arousable with ammonia or body stimuli. Defendant's pupils were dilated at the time of his admission to the hospital, and he had slurred speech. Culler testified that drowsiness and slurred speech can be symptomatic of a brain concussion. Culler did not hear Officer Fabrie tell the defendant that he had a right to refuse the blood sample or that the sample could be used as evidence against him in court proceedings.

On redirect examination, Culler stated that defendant's head abrasion was superficial and there was "[n]o active bleeding, no bleeding from the ears or nose, no gross bruises, no hematomas, and no obvious deformities of the skull." In Culler's professional opinion, the defendant was "suffering from acute alcohol intoxication" rather than a concussion. She further stated that defendant appeared to be alert and responsive on both occasions when he responded to the officer's questions regarding a blood sample.

Officer Al Fabrie of the Wheaton Police Department next testified that in response to his request for a sample of blood, defendant stated, "sure, you can take all you want." No physical force or threats were used in obtaining the blood samples, and defendant was alert and responsive to Officer Fabrie's request. Later, Fabrie again asked defendant for a blood sample "for my use" that he could "take back to the department," and defendant responded, "you can have whatever you want." Fabrie testified again that no physical force or threats were used in connection with the obtaining of the second blood sample.

On cross-examination, Fabrie stated that the windshield of defendant's car was cracked above the steering wheel. With regard to the obtaining of the second blood sample, Fabrie asked defendant if he could have a sample "for my use to take to the police department." Fabrie, however, did not tell defendant that the sample could be used as evidence against him in a court of law nor that he had a right to refuse to give the sample. Fabrie also did not inform the defendant that the other person involved in the collision, Mrs. Gill, had died. Fabrie stated that defendant was never placed under arrest.

After the State had presented its evidence, the defendant moved for a directed finding without presenting any testimony. After oral arguments, the court ruled that defendant had not given his consent to the taking of

the blood samples as required by section 11—501(c) of the Illinois Vehicle Code. (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(c).) The court reasoned that the "consent" required by statute must be "intelligent" and "knowing." The court ruled that the evidence presented by the State did not demonstrate that defendant gave this type of consent since he was not informed "as to what the sample of blood would be used for." The court stated that at the very least the officer was required to tell the defendant that the "sample of your blood shall be tested to determine its alcoholic content and the determination of that alcoholic content may be important in whether or not you are charged with a crime and can be used against you in a trial of the case." The court also found there was no coercion used on the defendant.

At this point, the State orally represented that the court's ruling would substantially impair the ability of the prosecution to proceed with the case. Subsequently, after the record had been filed in this court, the State moved this court to supplement the record on appeal with a written certification of intent to appeal alleging that its ability to prosecute had been substantially impaired by the trial court's order. The defendant then filed an objection to the State's motion to supplement the record on appeal and moved to dismiss the appeal. The State filed a response to defendant's motion, and we ordered that these motions be taken with the case.

■■ Initially, therefore, we must decide whether this appeal should be dismissed for the State's failure to file the certificate of intent to appeal in the trial court. The State's right of appellate review is limited to rulings which substantially impair prosecution of the case. (*People v. Flatt* (1980), 82 Ill. 2d 250, 412 N.E.2d 509.) Our supreme court has recently held that in order to take an interlocutory appeal from a pretrial order suppressing evidence, the State must certify that the trial court's ruling substantially impairs the ability to prosecute. (*People v. Young* (1980), 82 Ill. 2d 234, 412 N.E.2d 501.) Since the trial court's ruling was based on its interpretation of the statutorily required "consent," this case falls squarely under the holding in *Young* requiring certification when the trial court's order suppressing evidence is based on other than constitutional grounds. See also *People v. Norris* (1981), 101 Ill. App. 3d 664, 667, 428 N.E.2d 987, *appeal denied* (requiring certification also when the order suppressing evidence is based on the determination that evidence was obtained by illegal search and seizure).

■■ Although it has been held that the filing of the certificate in the trial court subsequent to the filing of the notice of appeal (*People v. Norris* (1981), 101 Ill. App. 3d 664, 668, 428 N.E.2d 987) and the filing of the certificate in the appellate court (*People v. Keath* (1981), 101 Ill. App. 3d 652, 656, 428 N.E.2d 992) do not affect the appellate court's jurisdiction,

we need not reach the latter issue under the facts of the present case. We find that the State's specific oral representation to the trial court that its case had been substantially impaired constitutes substantial compliance with rule announced in *Young*. After the court has articulated its ruling at the suppression hearing, the assistant State's Attorney stated:

> "Your Honor, the position of the People pursuant to People versus Young and People versus Flatt is that Your Honor's ruling would substantially impair the ability of the prosecution to proceed with this case. * * *
>
> That without this evidence, our ability to prove the extent of his intoxication as an element of recklessness which is clearly manifest by the discovery in this case at this point, and if we were to proceed to the point where we answered the Bill of Particulars, would be one of the elements of recklessness that we would be relying upon, is substantially deteriorated by the Court's ruling.
>
> Therefore, we would certify that we have been substantially impaired in our ability to proceed with this case and we will be filing a notice of appeal pursuant to People versus Young and Flatt * * *."

While we believe the better practice and the one contemplated by *Young* to be the filing of a written certificate with the trial court, in light of the lack of a showing of prejudice to defendant, we believe that the oral representation was substantial compliance with the rule under these circumstances. Even if we were to find that this was not substantial compliance with the rule, we would hold that the error under the circumstances here was harmless. (*Cf. People v. Hopson* (1981), 101 Ill. App. 3d 564, 574-75, 428 N.E.2d 680, *appeal denied*.) We therefore proceed to the merits of the case.

The State contends that the trial court erred in suppressing the results of the blood tests pursuant to its interpretation of the definition of "consent" required by section 11—501(c)(3) of the Illinois Vehicle Code. That section provides in relevant part:

> "Upon the trial of any action or proceeding arising out of the acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his breath, blood, urine, saliva or other bodily substance is admissible, as provided hereinafter in this paragraph (c) * * *.
>
> * * *
>
> Evidence based upon a chemical analysis of blood, urine, breath or other bodily substance shall not be admitted unless such substance

was procured and such analysis made with the consent of the person as provided by this Chapter, whose bodily substance was so analyzed." (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(c)(3).) The State contends that all that is required by the statute is that the consent be voluntary. Defendant, on the other hand, contends that the proper standard is a "knowing and intelligent" consent.

We have previously addressed this issue in a different factual context in *People v. Cook* (1981), 94 Ill. App. 3d 73, 418 N.E.2d 457. In *Cook*, this court held that in order for a defendant to effectively give his consent to a blood withdrawal, he need not be informed of his *Miranda* rights. With regard to section 11—501(c)(3) of the Illinois Vehicle Code, we specifically adopted the definition of consent articulated by the United States Supreme Court in *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041, while stating that the appropriate inquiry is whether a voluntary consent was obtained from the defendant prior to his submission to the test and that "voluntariness of the consent is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." (94 Ill. App. 3d 73, 76, 418 N.E.2d 457.) Furthermore, Illinois courts have consistently applied the *Schneckloth* test in determining the voluntariness of consent in the context of fourth amendment rights. See, *e.g.*, *People v. Bean* (1981), 84 Ill. 2d 64, 417 N.E.2d 608; *People v. Lucas* (1980), 88 Ill. App. 3d 942, 410 N.E.2d 1040; *People v. Armstrong* (1979), 77 Ill. App. 3d 916, 396 N.E.2d 845.

■■ Quite clearly, the requirement of "consent" is purely statutory in nature and is not constitutionally mandated. In *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826, the Supreme Court rejected arguments that a compulsory blood test violated various constitutional rights of the accused. The court held, among other things, that the privilege against self-incrimination protects a defendant only from being compelled to testify against himself or otherwise provide the State with evidence of a testimonial or communicative nature. (384 U.S. 757, 761, 16 L. Ed. 2d 908, 914, 86 S. Ct. 1826, 1830.) Since the withdrawal and analysis of blood, even though by means of compulsion, was not testimonial nor did it relate to some communicative act or writing of the defendant, the privilege against self-incrimination was not involved. 384 U.S. 757, 765, 16 L. Ed. 2d 908, 916-17, 86 S. Ct. 1826, 1833.

■■ Indeed, our supreme court has described the consent requirement of section 11—501 of the Illinois Vehicle Code as an "unfortunate result and a cruel anomaly." (*People v. Todd* (1975), 59 Ill. 2d 534, 544, 322 N.E.2d 447.) The court in *People v. Todd* stated:

"Since *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d

908, 86 S. Ct. 1826, it is clear that a compulsory blood test does not violate any constitutional rights of an individual merely because he objected to such tests. Further, the absence of a formal arrest may not taint a limited search, given probable cause and evidence that may dissipate. (See *Cupp v. Murphy* (1973), 412 U.S. 291, 36 L. Ed. 2d 900, 93 S. Ct. 2000.) A number of cases, dealing specifically with the question of blood tests and the removal of blood from a person without consent, have upheld the constitutional right to do so even where the person was unconscious and, in some cases, without a formal arrest so long as probable cause is present. See *DeVaney v. State* (1972), 259 Ind. 483, 288 N.E.2d 732; *People v. Fidler* (1971), 175 Colo. 90, 485 P.2d 725; *State v. Deshner* (1971), 158 Mont. 188, 489 P.2d 1290; *State v. Mitchell* (Fla. 1971), 245 So.2d 618; *State v. Findlay* (1966), 259 Iowa 733, 145 N.W.2d 650.

Thus, absent a more limiting statutory provision, the taking of a blood sample does not require the consent of the donor. The anomaly is that in drunken-driving cases in certain other jurisdictions, the State may obtain a blood sample if the results thereof are relevant to the case. Yet there is no case which is more compelling than that involving the drunk driver." (59 Ill. 2d 534, 544-45, 322 N.E.2d 447, 453-54.)

In light of the absence of any express statutory provision specifying the standard of consent and the fact that consent to blood withdrawal and analysis involves no aspect of waiver of one's privilege against self-incrimination or right to a fair trial, we refuse to adopt the more stringent "knowing and intelligent" standard argued by the defendant. In accordance with our prior ruling in *Cook*, we hold that section 11—503(c)(3) of the Illinois Vehicle Code requires only that the consent be "voluntary" as defined by *Schneckloth*. Although the *Schneckloth* definition of consent was articulated in a fourth amendment search and seizure context and we are herein concerned with a purely statutory consent, we find the *Schneckloth* standard to be relevant. The "knowing and intelligent" standard is neither required by statute nor constitution in Illinois. As stated in *Schneckloth*, "[a]lmost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." (412 U.S. 218, 237, 36 L. Ed. 2d 854, 868, 93 S. Ct. 2041, 2052-53.) The rule has been extended to certain stages before the actual trial only as applied to a waiver of counsel at a pretrial lineup and waiver of counsel upon custodial interrogation by the police. 412 U.S. 218, 238-40, 36 L. Ed. 2d 854, 869-70, 93 S. Ct. 2041, 2053-54.

On the record before us we find that defendant voluntarily consented to the withdrawal of his blood. Both Frances Culler and Officer Fabrie

testified that the defendant acquiesced in Fabrie's requests for blood. Although Culler testified that, in her opinion, the defendant was intoxicated, both she and Fabrie testified that defendant was alert and responsive to his requests. Likewise, our reading of the record does not indicate that defendant was of such a mental state that he was incapable of understanding and consenting to these requests. Also, Fabrie's testimony that no physical force or threats were used in obtaining the blood samples is uncontradicted, and the court below found no coercion.

■■ Although it is clear that defendant voluntarily gave his consent to the initial obtaining of the blood samples, the statute requires more. Section 11—501(c) states that evidence based upon the analysis of blood "shall not be admitted unless such substance was procured *and such analysis made* with the consent of the person * * *." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(c).) Thus, the statute requires that the defendant consent not only to the actual withdrawal of blood but also to its subsequent analysis.

A close examination of the trial court's oral ruling indicates to us that the court felt that defendant's consent was ineffectual since he was not informed that the blood samples would be tested, would be important in determining if defendant would be charged, and could be used as evidence against him in a trial. However, neither the statute nor the constitution mandates that the defendant be informed to that extent. Requiring such an admonition would be tantamount to imposing the "knowing and intelligent" standard which we have expressly rejected. Our reading of the record satisfies us that defendant voluntarily consented to both the withdrawal of his blood and its later analysis. Nurse Culler testified that defendant was asked by Officer Fabrie if he could take a blood sample "for me." Also, Fabrie testified that prior to obtaining the second blood sample, he asked defendant if he could take a blood sample "for my use" to "take back to the department." Defendant readily complied with these requests, and it is uncontroverted, and indeed the trial court found, that no threats of force or coercion were used upon defendant. We regard Officer Fabrie's statements as sufficient to inform defendant that an analysis was to be made on his blood. We do not believe that the defendant need be informed in the precise language of the statute that his consent would result in the blood sample being subject to a chemical analysis. So long as the words used would sufficiently convey this impression to one capable of understanding, this is all we feel is required. (*Cf. California v. Prysock* (1981), 453 U.S. 355, 69 L. Ed. 2d 696, 101 S. Ct. 2806 (warnings required by *Miranda* need not be a virtual incantation of the precise language contained in that opinion so long as their fully effective equivalent is used).) We find that Officer Fabrie's statements that the blood sample would be for his use to take back to the

police department were sufficient to comply with the statutory requirement of consent to the analysis. While the failure of Officer Fabrie to advise the defendant of the potential use of the results of the blood samples at a trial is a factor to be evaluated in assessing the voluntariness of his consent, under the facts here we deem the consent to both the withdrawal and analysis to be voluntary.

■■ Finally, the defendant has argued that if we determine that the trial court incorrectly required a knowing and intelligent consent standard, we should remand to the trial court for further hearings upon the motion to provide the defendant with an opportunity to present his evidence in answer to the State's evidence previously adduced below. The motion to suppress below alleged both statutory and fourth amendment grounds for suppression of the blood test results. While the issue raised before us on appeal involves solely a suppression of evidence on what, in effect, is an evidentiary ruling for failure to comply with a statute, we feel the procedure for a motion to suppress evidence illegally seized set forth in section 114—12 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—12) should be followed when both constitutional and nonconstitutional violations are raised together by motion to suppress. (See *People v. Young* (1980), 82 Ill. 2d 234, 412 N.E.2d 501.) Under section 114—12(b) the "burden of proving that the search and seizure were unlawful shall be on the defendant." In Illinois, the defendant has the primary responsibility for establishing the factual and legal bases for the motion to suppress, and where the basis for the motion is an allegedly illegal search, it is incumbent upon the defendant, in the first instance, to establish both that there was a search and that it was illegal. (*People v. Berg* (1977), 67 Ill. 2d 65, 68, 364 N.E.2d 880.) In a search pursuant to consent, once a defendant has made a *prima facie* case that a search is "unreasonable" the State has the burden of going forward with evidence which would demonstrate that consent was in fact freely and voluntarily given. (*People v. Lucas* (1980), 88 Ill. App. 3d 942, 950, 410 N.E.2d 1040; but see 3 W. LaFave, Search and Seizure sec. 11.2(b), at 498 (1978).) We believe that these procedures are applicable also to motions to suppress on nonconstitutional grounds, especially when brought in the same motion alleging a constitutional basis. Thus, as applied to this case, the parties agreed that the State would go ahead with proofs after a stipulation that the blood samples were not taken pursuant to a search warrant. While we question whether the stipulation alone was sufficient to constitute a *prima facie* case showing that the consent was not voluntary, especially where only non-constitutional grounds are alleged, the State assumed the burden after the stipulation. Accordingly, the defendant never put on any other evidence since he moved for, and was granted, a "directed finding" after the State concluded its evidence.

■■ The defendant had two opportunities to present evidence—one prior to the State putting on evidence and another at the conclusion of the State's evidence. Instead, the defendant made a motion for a "directed finding," a practice not statutorily provided for in pretrial hearings, and now seeks another opportunity to present evidence upon the State's successful appeal of the trial court's erroneous suppression order. To allow defendant's request would be to foster piecemeal appeals contrary to promotion of judicial economy. Defendant had adequate opportunity to present evidence below and has waived his right to present additional evidence upon remand.

For the foregoing reasons we reverse and remand.

Reversed and remanded.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.